John W. JOHNSON, Plaintiff,

v.

Lother G. GMEINDER and Victory Express, Inc., Defendants.

Jesse M. Clifton, Plaintiff,

v.

Lother G. Gmeinder and Victory Express, Inc., Defendants.

Nos. CIV.A. 98–2556–GTV, 98–2585–GTV.

United States District Court, D. Kansas.

March 6, 2000.

---

Thomas E. Ruzicka, Norton, Hubbard, Ruzicka & Kreamer, L.C., Olathe, KS, for plaintiff.

Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This matter is before the Court on Defendants' Motion for Protective Order to Quash Subpoena Duces Tecum of the Crawford & Company Records Custodian (doc. 69) and Defendants' Motion for Protective Order to Quash Notice Duces Tecum of the Dressler Consulting Engineers, Inc. [Records Custodian] (doc. 71).

As a preliminary matter, the Court notes that there is some confusion as to whether Plaintiffs are seeking to quash a *subpoena* served on the records custodians for Crawford & Company or seeking to prevent the deposition based on a deposition *notice* served on Defendants.[1] If Defendants are seeking to quash a subpoena served on a third party pursuant to Fed.R.Civ.P. 45, then that rule would apply to their Motion.[2] If

---

1. In both the caption and body of their Motion relating to Crawford & Company, Defendants indicate that the are seeking to "[Q]uash the Subpoena Duces Tecum." The caption of Defendants' supporting memorandum indicates likewise. In the body of their memorandum, however, Defendants refer to a *deposition notice*, and, indeed, attach a copy of a deposition *notice* and not a *subpoena*.

2. Generally speaking, a party does not have standing to quash a subpoena served on a third party. *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Colo.1997). An exception is made, however, where, as here, the party seeks to quash

Defendants are seeking to prevent a deposition that is merely noticed, a motion for protective order pursuant to Fed.R.Civ.P. 26(c) would be more appropriate. Because Defendants indicate in the body of their supporting memorandum that they are seeking relief pursuant to Fed.R.Civ.P. 26(c) and D.Kan. Rule 26.2, and because they submit to the Court copies of a deposition notice rather than a subpoena, the Court will treat their motion with respect to Crawford & Company as a Rule 26 motion for protective order.

In their motion relating to Dressler Consulting Engineers, Inc., ("Dressler Engineers"), Defendants are more consistent in referring to a deposition notice rather than a subpoena; however, they still indicate that they are seeking "to quash" the notice of deposition. On the other hand, they state they are seeking relief pursuant to Fed.R.Civ.P. 26(c) and D.Kan. Rule 26.2, and they submit a copy of a deposition notice rather than subpoena. The Court will therefore also treat the Dressler Engineers motion as a Rule 26 motion for protective order.

## I. FACTUAL/PROCEDURAL BACK-GROUND AND SUMMARY OF ARGUMENT

### A. DOCUMENTS REQUESTED IN THE NOTICES

Both deposition notices ask the records custodian to bring the following documents to the deposition:

> All files, including photographs, video tapes, correspondence, reports, telephone recordings, recorded statements of any witnesses, communications with any individual or entity involving your investigation of an automobile accident involving John W. Johnson, Jesse M. Clifton, and Lother G. Gmeinder, which occurred on December 13, 1997 on K–32 Highway near Steele Road in Edwardsville, Kansas.

### B. CRAWFORD & COMPANY REC-ORDS CUSTODIAN DEPOSITION

Defendants contend they are entitled to a protective order to prevent the deposition of the Crawford & Company records custodian based on claims of privilege relating to the documents because the particular documents sought are privileged attorney-client communications and work product. Defendants assert that Crawford & Company conducted an investigation into the accident that is the subject of this lawsuit and that the investigation was directed by Victory Express' in-house counsel in anticipation of litigation. Thus, they argue that any documents relating to the investigation are protected work product. Defendants further assert that they "have previously identified these [protected] materials in their interrogatory answers," in which they asserted general objections based on work product immunity and the attorney-client privilege. Defendants note that Plaintiffs filed motions to compel production "of the same materials." Doc. 70 at 2. The Court has since ruled on those motions to compel. See doc. 78.

The Court granted a significant portion of the relief requested in the Motions to Compel, and ordered Defendant Victory Express to produce documents responsive to Plaintiffs' Requests for Production Nos. 2, 3, and 4. The Court rejected Defendant Victory Express' argument that many of the requested documents were work product and privileged attorney-client communications, finding that Victory Express had failed to sufficiently identify the allegedly privileged documents and to provide facts sufficient to permit the Court to assess the applicability of the claimed privileges. The Court denied Defendants' Motion to Reconsider on the same issues. See doc. 114.

Shortly after the Court denied the Motion to Reconsider, it gave the parties the opportunity to file supplemental briefs regarding the instant motions for protective orders. The Court anticipated that the Parties would file supplemental briefs indicating which specific documents were actually produced and how that production affected the instant motions. No supplemental briefs were filed, however. Thus, it is not clear what documents were produced and whether any of those documents are some of the same documents that are the subject of the instant motions. It appears, however, that at least ments being sought. *Id.*

some of the documents that were produced as a result of the Court's ruling on the Motions to Compel are also the same documents at issue here.

Plaintiffs contend they are entitled to take the deposition of the Crawford & Company records custodian and to obtain the documents requested in the notice because those documents were disclosed to and considered by Defendants' testifying expert, Ronald Wells. Doc. 102 at 3. Plaintiffs claim that Mr. Wells' testified in his deposition that "certain photographs, video tapes, and a report all of which may have been prepared by Crawford & Company were considered by him to formulate his opinion of the case." Doc. 102 at 3.

In support of their argument that the documents allegedly considered by Mr. Wells are discoverable, Plaintiffs rely on a number of cases from other jurisdictions holding that the disclosure of work product to a party's expert who considers those materials in formulating his or opinion waives any work product protection. *See, e.g., B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57 (S.D.N.Y.1997) (disclosure and consideration of either fact or attorney/opinion work product to testifying expert results in waiver)*; Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.*, 168 F.R.D. 61 (D.N.M. 1996) ("all documents provided to a party's expert must be produced"); *United States v. City of Torrance*, 163 F.R.D. 590 (C.D.Cal. 1995) (disclosure and consideration of fact or attorney/opinion work product to testifying expert results in waiver); *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384 (N.D.Cal. 1991) (same). In their reply, Defendants urge the Court to reject the rule set forth in these cases and to adopt the contrary rule handed down by Judge Saffels in *All West Pet Supply Co. v. Hill's Pet Products*, 152 F.R.D. 634 (D.Kan.1993). In the alternative, Defendants argue that there is no evidence that any Crawford & Company documents were ever "utilized," let alone "provided to," Mr. Wells. (Doc. 99 at 6–7) Thus, even if the Court declines to follow the *All West* rule and instead adopts the rule set forth in the cases cited by Plaintiffs, the Court should

find that no waiver occurred and should not permit the deposition to go forward.

## C. DRESSLER ENGINEERS RECORDS CUSTODIAN DEPOSITION

Defendants also contend they are entitled to a protective order to prevent the Dressler Engineers records deposition because Dressler Engineers is an expert retained by Defendants who is not expected to be called as a witness at trial. Defendants correctly point out that Fed.R.Civ.P. 26(b)(4)(B) prohibits the deposition of a non-testifying expert unless the party seeking the deposition shows "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain factual opinions on the same subject by other means." Fed.R.Civ.P. 26(b)(4)(B).

Defendants also assert that the materials Plaintiffs seek from Dressler engineers are protected by the work product doctrine, inasmuch as they were prepared in anticipation of litigation under the direction of Defendant Victory Express' counsel. Defendants further state that they have previously objected to producing the "materials" that Plaintiffs seek to obtain through the deposition of the Dressler records custodian on the grounds that they are work product. Again, Defendants indicate that these documents are the subject of motions to compel filed by Plaintiffs. As noted above, the Court has since ruled on those motions, and, it appears that some of the same documents at issue may have already been produced to Plaintiffs.

Plaintiffs argue that they are entitled to the records deposition and the documents requested in the Dressler Engineers deposition notice because Mr. Wells testified in his deposition that in formulating his opinion he considered "certain photographs, video tapes, and statements prepared by Dressler Consulting Engineers, Inc." Doc. 104 at 3. Plaintiffs rely on the same cases cited above to support their contention that disclosure of these documents to Mr. Wells and his consideration of them waived any privileges that attached to those documents.

Defendants do not dispute that photographs, a videotape, and an "opinion report" prepared by Dressler Engineers at the direction of Victory Express' counsel in prepa-

ration for litigation and trial were *provided to* Dr. Wells. Doc. 99 at 7. Defendants do, however, dispute that Dr. Wells actually *considered* or *relied on* any of this information in formulating his opinion or in creating his report. *Id.* Defendants argue, again, that the Court should adopt the rule set forth in *All West* and find that the disclosure of these documents to their expert did not result in a loss of the privilege. In the alternative, Defendants argue that even if the Court declines to follow *All West*, the Court should find waiver only as to those documents that were actually disclosed to and considered by the expert at Dressler Engineers, which documents Defendants have already been produced to Plaintiffs. No privilege should be deemed waived as to any document *not* shown to Dr. Wells, such as (1) correspondence between Defendants and Dressler Engineers, and (2) "any additional investigative material that might be in the possession of Dressler [Engineers] which constitute work product." (Doc. 99 at 7.)

## II. ANALYSIS

To determine whether Plaintiffs are allowed to proceed with these records depositions the Court must address the following issues:

(1) What burden or burdens of proof should apply to the Court's analysis?

(2) Are the materials at issue protected work product, privileged attorney-client communications, or "privileged" materials under Fed.R.Civ.P. 26(b)(4)(B)?

(3) If the materials are protected or privileged, was that protection/privilege waived?

   a. Is there a legal basis supporting waiver?

   b. Is there a factual basis supporting waiver?

     • Were the materials actually disclosed to Defendant's expert?

     • If the materials were disclosed to the expert, did the expert consider them in formulating his opinion?

(4) If either the disclosure or production of the protected/privileged materials resulted in waiver of the protection/privilege, does that waiver entitle Plaintiffs to proceed with these records depositions?

(5) Did the production of any of the allegedly protected/privileged documents in response to the Court's partial granting of Plaintiffs' Motions to Compel result in waiver of the protection/privilege?

(6) Assuming either or both depositions are allowed to proceed, should any limitations be placed on the scope of the depositions, and if so, what limitations?

## A. WHAT ARE THE APPLICABLE BURDENS OF PROOF?

As a threshold matter, the Court must determine which party carries the burden of proof with respect to these motions. It is well settled that the party seeking a protective order has the burden to demonstrate good cause to support the protective order. *See, e.g., Sentry Ins. v. Shivers,* 164 F.R.D. 255, 256 (D.Kan.1996). It is also well established that the party seeking to invoke work product immunity or attorney-client privilege has the burden to establish applicability of the immunity/privilege. *See, e.g., Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984), *cert. denied,* 469 U.S. 1199, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985); *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* No. 94–22395–GTV, 1995 WL 625962, at *7 (D.Kan. Oct. 5, 1995); *National Union Fire Ins. Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D.Kan.1994). The party asserting the privilege must establish *all elements* of the immunity/privilege. *Audiotext,* 1995 WL 625962, at *7; *National Union,* 159 F.R.D. at 567.

With respect to the attorney-client privilege, one of the eight essential elements that must be established under Kansas law[3] is that the privilege has not been waived. *ERA Franchise Systems, Inc. v. Northern Ins. Co. of New York,* 183 F.R.D. 276, 278 (D.Kan. 1998) (citing *State v. Maxwell,* 10 Kan.App.2d 62, 63, 691 P.2d 1316, 1319 (1984); K.S.A. 60–

---

**3.** In a diversity case such as this, Kansas law governs any attorney-client privilege asserted

and the scope of that privilege. *See ERA Franchise Systems, Inc.,* 183 F.R.D. at 278.

426(c)(2)). In other words, the burden to establish that waiver has not occurred remains with the party who is asserting the attorney-client privilege.

In contrast, a party asserting work product immunity[4] is not required to prove "non-waiver." The only three elements that must be established by the party seeking to invoke work product immunity are that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party. *Zapata v. IBP, Inc.*, 175 F.R.D. 574, 576 (D.Kan.1997); *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 200 (D.Kan.1996). *See also* Fed. R.Civ.P. 26(b)(3). Thus, it follows that the party asserting waiver of work product immunity, rather than the party asserting the work product protection, should have the burden to establish waiver. *See Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D.Colo.1998) (party asserting work product has the burden to establish privilege is applicable; party asserting waiver has the burden to establish waiver); *In re Gibco, Inc.*, 185 F.R.D. 296, 298 (D.Colo.1997) (same); *Hatco Corp. v. W.R. Grace & Co.*, No. 89–1031, 1991 WL 83126, *7 (D.N.J. May 10, 1991) ("[P]arty seeking to obtain protected work product bears the burden of proving that the protection has been waived."); *In re Convergent Technologies Second Half 1984 Securities Litigation*, 122 F.R.D. 555, 565 (N.D.Cal. 1988) ("[T]he party asserting waiver [of work product immunity] has the burden of proving the facts necessary to support the finding.") *But see Musselman v. Phillips*, 176 F.R.D. 194, 201 (D.Md.1997) (party asserting immunity of work product provided to expert has burden "to demonstrate that the materials were not furnished to their expert to be used in forming an opinion, or that the expert did not consider the materials in forming the opinion").

To the extent that the Dressler Engineers documents are deemed "privileged" materials of a non-testifying expert under Rule 26(b)(4)(B) rather than protected, or in addi-

tion to being protected, under the work product provisions of Rule 26(b)(3), the same burden of proof applicable to waivers of work product should apply.

In light of the above, Defendants shall have the ultimate burden to establish good cause for the protective orders that they seek. Defendants shall also have the burden to establish that the documents they claim are protected by the attorney-client privilege are in fact so privileged, which includes carrying the burden to prove that no waiver of the privilege occurred. In contrast, with respect to the documents that Defendants claim are protected work product and/or "privileged" pursuant to Fed.R.Civ.P. 26(b)(4)(B), Defendants shall have the burden to establish that they are work product and/or materials prepared by a non-testimonial expert retained in anticipation of trial, and Plaintiffs shall have the burden to prove waiver.

## B. ARE THE DOCUMENTS AT ISSUE PROTECTED WORK PRODUCT, "PRIVILEGED" RULE 26(b)(4)(B) MATERIALS, OR PRIVILEGED ATTORNEY–CLIENT COMMUNICATIONS?

The Court will first decide whether Defendants have met their initial burden to show that the documents at issue are protected work product or otherwise privileged. Plaintiffs do not dispute—at least for purposes of these two motions—that the documents prepared by Crawford & Company are protected work product. The Court therefore concludes that those documents are protected by work product immunity. The Court cannot, however, conclude the same with respect to any documents that Defendants claim are protected by the attorney-client privilege. While Defendants assert that some of the Crawford & Company documents are attorney-client communications (*see* doc. 69 at 2, doc. 70 at 2), there is absolutely nothing in the record to support that assertion. The Court therefore finds that none of the documents are attorney-client privileged.

---

**4.** Federal law governs the applicability of the work product doctrine in federal court. *Burton* *v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 139 (D.Kan.1996).

Plaintiffs also do not dispute—at least for purposes of these motions—that Dressler Engineers is a Rule 26(b)(4)(B) expert. Nor do Plaintiffs dispute that the Dressler Engineers materials are work product. The Court therefore finds that the materials Plaintiffs seek from Dressler Engineers are both protected work product and "privileged" materials of a non-testimonial expert.

## C. WAS THE WORK PRODUCT PROTECTION OR RULE 26(b)(4)(B) "PRIVILEGE" AFFORDED THESE DOCUMENTS WAIVED WHEN THEY WERE ALLEGEDLY DISCLOSED TO AND CONSIDERED BY DEFENDANTS' EXPERT?

The Court will now examine whether waiver occurred as a result of the protected and/or privileged materials allegedly being disclosed to and considered by Defendants' expert. Plaintiffs' burden to prove waiver of the privilege is two-fold. Plaintiffs must first establish the principles of law from which the Court can conclude that waiver is proper. Plaintiff must then establish the facts that are necessary to support a finding of waiver under those legal principles.

### 1. Have Plaintiffs met their burden to establish the legal basis for waiver?

The Court will first turn to the case law that addresses whether the disclosure to, and consideration of work product or other privileged materials by, a party's expert results in waiver of the protection or privilege. As noted above, Defendants contend that Judge Saffels' decision in *All West Pet Supply Co. v. Hill's Pet Products*, 152 F.R.D. 634 (D.Kan.1993) is dispositive of this issue. The Court will therefore use that case as a starting point for its discussion. The Court notes, however, that *All West* deals only with the

disclosure of work product and not materials of a non-testifying expert.

In *All West,* Judge Saffels held that a litigant does not waive the protection afforded attorney work product by providing documents to its expert witness to assist the expert in formulating the expert's opinion. *Id.* at 637. In so ruling, Judge Saffels relied on a 1984 decision by the Third Circuit, *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587 (3d Cir.1984), in which the Third Circuit held that disclosure of attorney work product to, and consideration by, the party's testifying expert did not result in waiver of the work product immunity. Judge Saffels also relied on a 1989 decision by Judge Rogers, *Hamel v. General Motors Corp.,* 128 F.R.D. 281 (D.Kan.1989), and a 1987 decision by Judge O'Connor, *Bethany Medical Center v. Harder,* 1987 WL 47845 (D.Kan. March 12, 1987). *All West,* 152 F.R.D. at 638. In relying on those cases, Judge Saffels stated that the rule contained therein was in accord with "the weight of authority" from other jurisdictions, and held that, in the absence of any controlling opinion from the Tenth Circuit or the United States Supreme Court, he would adopt that rule. *Id.*

The parties in this case have failed to recognize that *All West* applies only to *opinion* (or what is sometimes referred to as "*attorney*") work product. None of the parties has even suggested that the materials at issue here are opinion or attorney work product, and nothing in the record would support such a conclusion.[5] Thus, the Court concludes that the items at issue here are fact, rather than opinion, work product.

The distinction between fact and opinion work product is important here because *the All West rule that Defendants urge this Court to adopt applies only to opinion work product.* Defendants conveniently ignore the fact that *Bogosian,* upon which *All West,*

---

**5.** Courts have long recognized a difference between fact work product and opinion work product. *Frontier Refining Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d 695, 704 n. 12 (10th Cir.1998). "Opinion work product" is any document or tangible thing (or portion thereof) that reflects an attorney's mental impressions, conclusions, opinion or legal theories. *Snowden v. Connaught Laboratories, Inc.,* 137 F.R.D. 325, 332 (D.Kan.

1991). "Fact work product" is all other work product. *Id. See also Hamel v. General Motors Corp.,* 128 F.R.D. 281, 282 (D.Kan.1989) ("[U]nder Rule 26 there are two types of work product to consider: factual work product—the gathering of facts in anticipation of litigation; and opinion work product—the development of mental impressions, opinions or legal theories in anticipation of litigation.").

*Hamel and Bethany Medical Center* rely, expressly recognized that *a different rule applies to fact work product.* After the *Bogosian* court ruled that the plaintiffs had not waived the protection afforded the attorney work product by disclosing it to their expert, the court went on to apply a different rule to fact work product. *See Bogosian,* 738 F.2d at 595. The court held that if any document contained both fact and opinion work product, the fact work product would still need to be produced:

> Of course, where the same document contains both facts and legal theories of the attorney, the adversary party is entitled to discovery of the facts.... Where such combinations exist, it will be necessary to redact the documents so that full disclosure is made of facts presented to the expert and considered in formulating his or her opinion, while protection is accorded the legal theories and the attorney-expert dialectic.

*Id.*

■ The overwhelming majority of courts are in agreement that the disclosure of *fact* work product to a testifying expert, in conjunction with the expert's consideration of those materials, results in waiver of the work product immunity. *See B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.,* 171 F.R.D. 57, 62 (S.D.N.Y.1997) ("[T]the consensus among federal courts since the 1970 Amendment [to Fed.R.Civ.P. 26] had already been in favor of disclosure of factual information.") and cases cited therein; *Barna v. United States,* No. 95 C 6552, 1997 WL 417847 (N.D.Ill. July 28, 1997) (even prior to the 1993 amendments, courts "routinely held" that fact work product was discoverable) and cases cited therein.

Thus, to the extent the materials alleged to have been disclosed to Defendants' expert are fact work product, it is clear—even under *All West*—that disclosure of the documents to, and consideration by, Defendants' expert resulted in waiver of their protected status.

A more difficult question to answer is whether the same rule should apply to the Dressler Engineers materials that enjoy "privileged" status under Fed.R.Civ.P. 26(b)(4)(B). The parties have not addressed what case law or legal principles should be applied to determine whether that "privilege" is waived by disclosure of the materials to, and consideration by, a testifying expert.

At least one older decision has held that the disclosure of a non-testimonial expert's materials to a testifying expert should be analyzed under the parameters of Fed. R.Civ.P. 26(b)(4)(B). *See Heitmann v. Concrete Pipe Machinery,* 98 F.R.D. 740 (E.D.Mo.1983). Under that rule, the facts and opinions of a non-testifying expert are discoverable only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

*Heitmann* held that the authority for an order compelling production of a non-testifying expert's report that had been disclosed to the testifying expert must be found in Rule 26(b)(4). *Id.* at 742. The court therefore held that the party seeking the report had to show exceptional circumstances under which it was impracticable for him to obtain the report or the facts and opinions contained therein. *Id.* The court found that those exceptional circumstances existed because the testifying expert had relied upon the report in rendering his opinion and the report was necessary to facilitate his cross examination. *Id.*

In light of *Heitmann,* it could be argued that Plaintiffs in this case must show such exceptional circumstances. The Court, however, is not convinced that *Heitmann* is still good law in light of the 1993 amendments to Fed.R.Civ.P. 26(a)(2) and (a)(2)(B) and the Advisory Committee Note analyzing the significance of those amendments. Subsections (a)(2) and (a)(2)(B) were amended in 1993 to require parties to submit disclosures for any expert witness retained to testify at trial, with the disclosure to be accompanied by a report reciting "the data or other information considered by the witness in forming the opinions." Fed.R.Civ.P. 26(a)(2)(B).

The Advisory Committee Note accompanying amended subsection (a)(2)(B) makes it clear that the "other information" considered by the expert must include *any type of work*

*product or other privileged information* provided to the expert by the attorney who retained the expert. The Note states:

> The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, *litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.*

Advisory Committee Note to Fed.R.Civ.P. 26(a)(2)(B), 146 F.R.D. 401, 634 (1993) (emphasis added).

The Advisory Committee Note makes no distinction between types of privileged or protected materials. Indeed, cases interpreting the Note and the amendments have held that the amended rule "unambiguously provide[s] a 'bright-line' rule in favor of production of *any information* which the expert considers." *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.,* 171 F.R.D. 57, 66 (S.D.N.Y.1997) (quoting *Karn v. Ingersoll–Rand Co.,* 168 F.R.D. 633, 638 (N.D.Ind.1996)) (emphasis added).

Several policy reasons support such a rule. First, obtaining the materials or documents that a testifying expert considers is crucial if an adverse party is to determine the extent to which the opinion of the expert may have been influenced by counsel or, in this case, by the non-testifying expert. Without the materials, the opposing party will be denied the opportunity to a full and fair cross-examination of the expert witness. Second, the "bright-line" rule, because of its clarity and ease of application, allows the parties to know in advance or trial what materials will be discoverable.

The Court recognizes that this is an area in which there is considerable room within which thoughtful and learned judges can reach different conclusions. Indeed, Judge Saffels in *All West* declined to find waiver when attorney work product was disclosed to the testifying expert. See *All West,* 152 F.R.D. at 637. The Court notes, however, that *All West* was decided almost immediately after Rule 26(a)(2) was amended and before there was little commentary on the issue.[6] The Court also notes that *All West* did not address the Advisory Committee Note which makes it clear that all materials—regardless of their privileged or other protected status—are discoverable if disclosed to and considered by the expert. The Court is mindful of the United States Supreme Court decisions which hold that the construction given by the Advisory Committee is "of weight" and should be given due deference when interpreting any Federal Rule of Civil Procedure. *Schiavone v. Fortune,* 477 U.S. 21, 30–31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986); *Mississippi Pub. Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946).

The Court is also mindful of the Supreme Court's admonition that courts "are to give the Federal Rules of Civil Procedure their 'plain meaning.'" See *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 540, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991) (quoting *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 123, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989)). The Court finds the language of amended Rule 26(a)(2)(B) to be clear and plain—*all* data or information considered by the expert must be disclosed.

The Court further notes that the majority of decisions handed down after the 1993 amendments have held that when an attorney provides any type of protected or privileged materials to a testifying expert who considers them in forming his/her opinions, the documents are no longer privileged and must be produced to the other parties to the lawsuit. *See, e.g., Lamonds v. General Mo-*

---

**6.** Most commentators have reached a similar conclusion. *See, e.g.,* 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2016.2 at 250–52 (1994) ("[W]ith respect to experts who testify at trial, the disclosure requirements of Rule 26(a)(2), adopted in 1993, were intended to pretermit further discussion and mandate disclosure despite privilege."); Lee Mickus, *Discovery of Work Product Disclosed to a Testifying Expert Under the 1993 Amendments to the Federal Rules of Civil Procedure,* 27 Creighton L.Rev. 773, 808 (1994).

*tors Corp.*, 180 F.R.D. 302, 305 (W.D.Va. 1998) (applying rule to opinion work product); *Musselman v. Phillips*, 176 F.R.D. 194, 202 (D.Md.1997) (same); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57, 66 (S.D.N.Y.1997) (same); *Karn v. Ingersoll–Rand Co.*, 168 F.R.D. 633, 639–40 (N.D.Ind.1996) (same); *Barna v. United States*, No. 95 C 6552, 1997 WL 417847 (N.D.Ill. July 28, 1997) (same). These cases recognize that even the *absolute* immunity provided for opinion work product must give way to Rule 26(a)(2)(B)'s all encompassing rule of disclosure. There is no reason that the same result should not obtain to the *qualified* immunity provided a non-testifying expert's materials.

■ In sum, the policy reasons, the plain language of amended Rule 26(a)(2)(B), the Advisory Committee Note, and the weight of authority supports this Court's conclusion that any type of privileged material, including materials or documents prepared by a non-testifying expert, lose their privileged status when disclosed to, and considered by, a testifying expert. The Court therefore holds that Plaintiffs have met their burden to establish a legal basis for waiver.

## 2. Have Plaintiffs met their burden to establish facts upon which a finding of waiver can be made?

Having determined that a legal basis exists for waiver, the Court must next determine whether, the facts of this case support a finding of waiver.

### a. The Crawford & Company materials

■ With respect to the Crawford & Company materials, the Court finds that Plaintiffs have failed to carry their burden to establish facts upon which the Court can find waiver. As noted above, Plaintiffs claim that certain photographs, videotapes and an investigative report that were prepared by Crawford & Company were provided to Defendants' expert, Ronald Wells. In their brief, however, Plaintiffs effectively concede that they do not know whether those items were actually prepared by Crawford & Company. In addition, they make no mention of any other alleged Crawford & Company ma-

terials or documents being provided to Mr. Wells. They merely state that the "photographs, video tapes and a report [provided to Mr. Wells] *may have* been prepared by Crawford & Company." Doc. 102 at 3 (emphasis added).

Although Plaintiffs cite to Mr. Wells' deposition testimony in an attempt to persuade the Court that the Crawford & Company photographs, videotapes and investigation report were provided to Mr. Wells, the testimony does not support Plaintiffs' assertion. Mr. Wells unequivocally testified that he received *no reports* from Crawford & Company. Wells Depo., p. 11, ll. 17–18. While he did testify that he was given a videotape, he never identified it as a tape *made by Crawford & Company.* To the contrary, he testified that it was "produced by a lady engineer in training, EIT, that worked for Dressler." *Id.*, p. 6, ll. 14–22. In a later section of his deposition, Mr. Wells testified that he was provided a videotape and that the person who made the tape was probably identified on the outside of the tape, if not in the text itself. *Id.*, p. 9, ll. 21–25 and p. 10, ll. 1–8. He was never asked during the deposition to identify that person, however, and from the context of his testimony it appears that he is referring to the videotape made by the engineer at Dressler Engineers.

With respect to the photographs, Mr. Wells testified that one of Defendants' attorneys provided him with "a lot of photographs," which he understood were from the "Dressler firm." *Id.*, p. 8, ll. 11–25. In another section of his deposition he testified that some of the photographs Defendants' counsel provided him "could have been [taken] by Crawford & Company," but "[t]hey weren't identified who took the photographs." *Id.*, p. 25, ll. 11–25 and p. 26, ll. 1–3 (emphasis added).

The Court finds that Plaintiffs have not met their burden of establishing that any Crawford & Company materials were *actually disclosed* to Defendants' expert. Without proving disclosure, Plaintiffs cannot prove waiver. The Court therefore rejects Plaintiffs' argument that they are entitled to take the deposition of the Crawford and Company records custodian on the basis that the Com-

pany's work product was disclosed to Defendants' expert.

### b. The Dressler Engineers materials

Plaintiffs contend that Defendants provided to Mr. Wells various photographs, videotapes and statements prepared by Dressler Engineers. Defendants do not dispute that Mr. Wells was provided photographs, a videotape and an "opinion report" prepared by Dressler Engineers. Plaintiffs have therefore met their burden to show that the materials were actually provided to the expert. That is not the end of our inquiry, however, since something more than mere disclosure to the expert is required.

Courts have generally required that in order for waiver to occur, the work product must have been "considered" by the expert in formulating his or opinions. *See, e.g., Lamonds v. General Motors Corp.,* 180 F.R.D. 302, 305 (W.D.Va.1998); *Musselman v. Phillips,* 176 F.R.D. 194, 201 (1997); *Barna v. United States,* No. 95 C 6552, 1997 WL 417847, at *2 (N.D.Ill. July 28, 1997); *Karn v. Ingersoll–Rand Co.,* 168 F.R.D. 633, 635 (N.D.Ind.1996); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.,* 1993 WL 360674, at *1 (C.D.Cal. Aug. 6, 1993).

These cases are consistent with the language of amended Fed.R.Civ.P. 26(a)(2)(B), which, as noted above, requires the expert's report to identify all data or other information "*considered* by the witness in forming the opinions." (Emphasis added.) There is no requirement that the expert must have "relied" upon the work product in formulating his or opinion. *Lamonds,* 180 F.R.D. at 306 (noting that the term "considered" "clearly invokes a broader spectrum of thought than the phrase 'relied upon,' which requires dependence on the information"); *Karn,* 168 F.R.D. at 635; *Baxter Diagnostics, Inc.,* 1993 WL 360674, at *1. Notably, the drafters of the 1993 amendments to Rule 26 rejected a version of subsection 26(a)(2) that would have required the expert's report to identify all data or information "relied upon" by the expert in forming his or her opinions. *See* August 1991 Proposed Rules, 137 F.R.D. 53, 89 (1991).

Neither the amended Rule nor the Advisory Committee Note defines the term "considered," and courts have struggled to define the term. One court has held that the term means "taking into account" the document or other material. *See Karn,* 168 F.R.D. at 635. Applying that definition, the court concluded that the work product at issue in that case had been "considered" where the experts had "reviewed the documents in connection with forming their opinions." *Id.*

Another court has held that documents are "considered" for purposes of Rule 26(a)(2) when an expert reviews the documents in connection with the formulation of the expert's opinion, even if ultimately rejected or not relied upon. *See Baxter Diagnostics, Inc.,* 1993 WL 360674, at * 1. Still another court has held that a document is "considered" if the expert receives and reads the documents before forming his or her expert opinion. *See Lamonds,* 180 F.R.D. at 306.

In this case, Defendants deny that the materials at issue, *i.e.,* the Dressler Engineers photographs, videotape and report, were considered by Mr. Wells in formulating his opinion or in creating his report. At his deposition, Mr. Wells testified that he viewed the videotape, Wells depo., p. 9, ll. 21–25 and p. 10, ll. 1–8, and looked at the photographs, *Id.,* p. 9, ll. 1–12. He also testified that he read the report, and that it was "meaningless to me" and "didn't make any sense." *Id.,* p. 13, ll. 5–24. At the same time, however, he testified that he did not "utilize" any of the Dressler Engineers photographs (except the ones identified as Depo. Ex. 1–V, which were provided to Plaintiffs at the deposition) in formulating his opinion. Wells Depo., p. 9, ll. 13–20; p. 12, ll.18–25. He also testified that he did not consider or use the videotape and that he did not use the report. *Id.,* p. 13, ll. 1–7. His testimony was as follows:

Q: Are you telling me that you did not even consider the videotape that was provided to you in formulating any of your processes or of your opinions?

A: I did not. I did not use it at all.

Q: What about the report from the lady at Dressler Engineering?

A: I did not use it.

*Id.*

He also testified that he "did not consider the information found by Dressler's report" in determining crush depth. Id., p. 15, ll. 9–15.

■ The Court concludes that Plaintiffs have met their burden to show that the photographs, videotape and report were "considered" by Mr. Wells in formulating his opinion, as that term is used in Rule 26(a)(2)(B). While Mr. Wells testified that he did not "consider" the report in formulating his opinion about crush depth, he did admit that he read it. He also effectively admitted rejecting the report because it did not make sense to him. Along similar lines, he admitted to having reviewed the videotape, even though he testified that he did not "consider" it in formulating any opinion. He also admitted to having looked at the photographs.

Asking this or any other court to determine whether an expert has "considered" certain materials, *as that term is commonly used*, would require the court to explore the expert's subjective mental processes and risks the creation of an unwieldy rule that would provide uncertainty as to the protected status of work product or other privileged materials. The Court believes it is important for practitioners to have a more definitive rule under which they can determine whether waiver has occurred. The Court therefore holds that where, as here, the expert has read or reviewed the privileged materials before or in connection with formulating his or her opinion, the expert will be deemed to have "considered" those materials for purposes of Rule 26(a)(2)(B).

In light of the above, the Court concludes that Plaintiffs have met their burden to show that Defendants' expert did in fact "consider" the Dressler Engineers photographs, videotape and report, and that, as a result, the work product protection and Rule 26(b)(4)(B) "privilege" that those materials otherwise enjoyed was waived.

## D. DOES WAIVER OF THE PROTECTED/PRIVILEGED STATUS OF THE DRESSLER ENGINEERS DOCUMENTS ENTITLE PLAINTIFFS TO DEPOSE THE DRESSLER ENGINEERS RECORDS CUSTODIAN?

Now that the Court has ruled that the disclosure of the Dressler Engineers photographs, videotape and report resulted in waiver of the protected/privileged status those materials enjoyed, the Court must proceed to determine whether that waiver means the deposition of the Dressler Engineers records custodian should go forward. Defendants—who have the ultimate burden to establish good cause for a protective order preventing the deposition—provide the Court will little guidance on this issue. They merely state that Fed.R.Civ.P. 26(b)(4)(B) prohibits the deposition of a non-testifying expert— such as their expert from Dressler Engineers—unless the party seeking the deposition shows "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." But Defendants also state that if the Court rules that waiver has occurred with respect to the Dressler Engineers materials, "then the only materials that Defendants should be required to produce would be the additional photographs, videotape, and opinion report" that were provided to Mr. Wells. Doc. 99 at 7. Defendants appear to be conceding then that waiver would have the effect of allowing the deposition to go forward. Plaintiffs provide no guidance on this issue either.

■ The Court does not find that Rule 26(b)(4)(B) should prohibit the deposition. The Rule applies only to the deposition of the expert him/herself, and then only to obtain "facts known or held by" the expert. Fed. R.Civ.P. 26(b)(4)(B). Here, Plaintiffs seek to depose the records custodian of Dressler Engineers, and not the engineer/expert herself, and not about facts or opinions known or held by the expert. But even if the Court found Rule 26(b)(4)(B) to be directly applicable, the Court would still allow the deposition to proceed under the "exceptional circumstances" provision of the Rule. Exceptional

circumstances are present here because Plaintiffs need the materials are needed to effectively cross-examine Defendants' testifying expert who considered the materials in formulating his opinion. The Court therefore holds that the records deposition of the Dressler Engineers Records Custodian should go forward.

### E. SHOULD LIMITATIONS BE IMPOSED ON THE SCOPE OF THE DRESSLER ENGINEERS RECORDS CUSTODIAN DEPOSITION?

The Court agrees with Defendants that the deposition should be limited to only those documents that were actually provided to and considered by Defendants' testifying expert. As set forth above, that would include the photographs taken by the expert at Dressler Engineers (including those that were marked as Ex. 1–V at Mr. Wells' deposition) and the videotape and report prepared by the expert at Dressler Engineers. Except as set forth in Part F below, the deposition will not be allowed to proceed with respect to any of the other documents or items listed in the deposition notice, and no questioning shall be allowed regarding those other documents and items.

### F. DID THE PRODUCTION OF DOCUMENTS IN RESPONSE TO THE COURT'S PARTIAL GRANTING OF PLAINTIFFS' MOTIONS TO COMPEL RESULT IN THE WAIVER OF THE PRIVILEGED STATUS OF ANY ADDITIONAL DOCUMENTS, AND IF SO, SHOULD THE RECORDS DEPOSITIONS BE ALLOWED TO PROCEED? AND IF ALLOWED TO PROCEED, WHAT LIMITATIONS SHOULD BE IMPOSED ON THEIR SCOPE?

As noted above in Parts I.B and I.C, the Parties have indicated that some of the documents at issue here were also the subject of Plaintiffs' Motions to Compel, which the Court partially granted. See doc. 78. It is not clear exactly what documents were produced after the Court granted the Motions to Compel, and the Parties declined to submit supplemental briefs on this issue, even after being invited to do so by the Court.

To the extent that any Crawford & Company or Dressler Engineers documents were produced to Plaintiffs as a result of the Court granting the Motions to Compel, the protected or privileged status that they enjoyed was waived. The Court will thus allow the depositions of the Crawford & Company and Dressler Engineers records custodians to go forward *to the extent that any Crawford & Company and Dressler Engineers materials have been already produced to Plaintiffs.*

The depositions will be allowed to proceed with respect to only those documents that have already been produced or that fall within Part E above (*i.e.*, the Dressler Engineers videotape, photographs, and report). No questioning regarding any other documents or materials shall be permitted.

In summary, Defendants' Motions for Protective Order (doc. 69 and 71) are granted in part and denied in part. The depositions shall proceed only as set forth in Parts II. D, II. E, and II. F.

IT IS SO ORDERED.