### In re TRI–STATE OUTDOOR MEDIA GROUP, INC., Debtor.

**Tri–State Outdoor Media Group, Inc., Movant,**

v.

**Official Committee of Unsecured Creditors to Tri–State Outdoor Media Group, Inc., Respondent.**

No. 02–70596.

United States Bankruptcy Court, M.D. Georgia, Valdosta Division.

Sept. 4, 2002.

David G. Aelvoet, San Antonio, TX, Raymond R. Aranza, Brown & Brown, P.C., L.L.O., Omaha, NE, Gary L. Barnhart, Missouri Department of Revenue, Jefferson City, MO, Darrel Begnaud, Athens, GA, Richard H. Bins, Rochester, MN, Russell S. Bogue, III, Hunton & Williams, Atlanta, GA, Michael S. Dietz, Rochester, MN, Erich N. Durlacher, Atlanta, GA, Ronald F. Fisk, Nevada, MO, T. Baron Gibson, II, Martin, Snow, Grant & Napier, Macon, GA, Stephen G. Gunby, Columbus, GA, Jeff Hermann, Brobeck, Phleger & Harrison, LLP, Los Angeles, CA, Jerome L. Kaplan, Macon, GA, Perry E. Kaufman, Commissioners of the Land Office, Oklahoma City, OK, Fred W. Krahmer, Fairmont, MN, Matthew R. Lawrence, Valdosta, GA, Paul Burke O'Hearn, Burr & Forman, LLP, Atlanta, GA, John P. Pringle, Los Angeles, CA, Milton A. Rosenblad, Rochester, MN, James R. Spradling, Carthage, MO, John R. Stoebner, Minneapolis, MN, Peter D. Wolfson, Sonnenschein, Nath & Rosenthal, New York City, for creditors.

Grant T. Stein, Jason H. Watson, Alston & Bird, Atlanta, GA, for debtor.

Wesley J. Boyer, Katz, Flatau, Popson & Boyer, LLC, Macon, GA, James E. Houpt, Sacramento, CA, Thomas L. Kent, Orrick, Herrington & Sutcliffe, LLP, New York City, Anthony Princi, Orrick, Herrington & Sutcliffe, LLP, New York City, for respondents.

## *MEMORANDUM OPINION*

JOHN T. LANEY, III, Bankruptcy Judge.

On July 29, 2002, the court held an emergency telephone hearing regarding the attorney-client privilege and work product doctrine protections that were being asserted during the deposition of David Rosen, a testifying expert and an employee of Houlihan, Lokey, Howard & Zuken ("Houlihan"), the financial advisors for the Official Committee of Unsecured Creditors ("Official Committee") of Tri-State Outdoor Media Group, Inc. ("Tri-State"). At the conclusion of the hearing, the court took the matters under advisement and the deposition continued. However, many questions were left unanswered because of the asserted attorney-client privilege and work product doctrine protections. On July 31, 2002, Tri-State filed a Motion to Compel the Deposition Testimony of Mr. Rosen and later amended the motion with an additional request to compel the production of certain documents that had been withheld. The parties were given an opportunity to submit briefs in support of their positions. The court has considered the evidence, the parties' briefs, affidavits and oral arguments, and the applicable statutory and case law. The court will grant the Motion to Compel in part and deny the Motion to Compel in part.

## FACTS

Tri–State is in the business of outdoor advertising in many states. In May 1998, Tri–State sold $100 million 11% Notes due in March 2008. After losses in the following years, Tri–State defaulted on the semi-annual payment due in November 2001. An ad hoc committee of bondholders ("Ad Hoc Committee") was formed to negotiate the financial restructuring of Tri–State. The Ad Hoc Committee hired Orrick, Herrington & Sutcliffe, LLP ("Orrick") as legal counsel.

In January 2002, Houlihan was retained by Orrick to provide financial advisory services to the Ad Hoc Committee "in connection with the [Ad Hoc Committee's] analysis, consideration and possible formulation of potential financial restructuring options" for Tri–State ("Retention Agreement"). (Declaration of David J. Rosen, Doc. 230, Ex. "1" at ¶ 1). Despite being retained by Orrick, Tri–State agreed to pay Houlihan because the possible restructuring would benefit the company. (*See id.* at ¶ 2). The Retention Agreement contemplated Bankruptcy and contained a confidentiality clause. (*See id.* at ¶¶ 5–6).

On April 25, 2002, after negotiations proved unsuccessful, the Ad Hoc Committee filed an involuntary petition for relief under Chapter 11 of the Bankruptcy Code ("Code"). On April 26, 2002, this case was converted to a voluntary Chapter 11 after Tri–State consented to the entry of an order for relief. Tri–State continues to operate the business as a debtor-in-possession.

As a result of the Bankruptcy filing, on May 14, 2002, the United States Trustee appointed the Official Committee of Unsecured Creditors, consisting mainly of former Ad Hoc Committee members. Houlihan was authorized to serve as financial advisors to the Official Committee but a new retention agreement was not signed.

On June 6, 2002, Tri–State filed a Motion for Entry of an Order Extending the Time to Assume or Reject Its Unexpired Leases of Nonresidential Real Property ("Lease Motion"). On June 21, 2002, the Official Committee filed an objection to the Lease Motion. On July 1, 2002, Tri–State filed a Motion for an Order Extending Debtor's Exclusive Periods Within Which to File a Plan and Solicit Votes Thereon ("Exclusivity Motion"). On July 26, 2002, the Official Committee filed an objection to the Exclusivity Motion.

On July 29, 2002, while preparing for the evidentiary hearing regarding the Lease Motion and the Exclusivity Motion scheduled for August 1, 2002, Tri–State deposed Mr. Rosen from Houlihan, who was expected to testify as an expert at the hearing. During the deposition, Mr. Rosen was questioned about the work he had done in conjunction with the Tri–State financial restructuring, including the involuntary Bankruptcy action. Specifically, the question was asked whether an analysis was done regarding the ramifications of a Bankruptcy filing on the leases held by Tri–State. (*See* Rosen Dep. at 44). Anthony Princi, the attorney from Orrick, as well as Mr. Rosen himself, objected to this question and other similar ones based on the attorney-client privilege and work product doctrine protections. (*See id.* at 34–35, 28, 44, 46, 59, 61, 63–66). Additionally, during the discovery process a privilege log was complied and certain documents were withheld from Tri–State.

Tri–State contends that the information and advice given to the former Ad Hoc Committee by Houlihan was business advice, not legal advice. Therefore, it should not be protected by the attorney-client privilege or the work product doctrine. Additionally, because the information and advice given was in the nature of business

planning and not in anticipation of litigation, it should not be afforded work product doctrine protection. Even if it is considered protected, Tri–State asserts that the Official Committee has put the information and advice at issue by opposing the Lease Motion and the Exclusivity Motion. Further, Tri–State contends that the Official Committee has waived protection by offering Mr. Rosen as an expert.

The Official Committee contends that the attorney-client privilege applies to third-party agents retained by counsel to assist counsel in rendering legal advice. The Official Committee argues that Rosen's advice is not unprotected business advice but rather it is protected advice from an attorney's third-party agent to a client. Further, the Official Committee contends that the work product doctrine does apply in this case because Houlihan was hired in anticipation of Bankruptcy. Even if the Official Committee has waived protection by offering Mr. Rosen as an expert, it is waived only to the extent of his proposed testimony regarding valuation.

## DISCUSSION

### Attorney–Client Privilege

■ Courts apply the attorney-client privilege only when necessary because it withholds relevant information from the adverse party and the court. *See Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Thus, the privilege attaches only to confidential communications made to the attorney by the client with the intent to receive legal advice or assistance. *See In re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir.1987). The party asserting the attorney-client privilege bears the burden of establishing its existence. *See id.* at 1225. Typically, advice from or passed through a third party destroys the existence of the privi-

lege. *See Shipes v. BIC Corp.*, 154 F.R.D. 301 (M.D.Ga.1994).

■ However, in today's complicated world, attorneys cannot work alone and must hire others to assist them; otherwise they would not be able to render adequate legal advice. *See United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961); *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir.1976)(privilege can be extended to third parties who are agents of the attorney); *HPD Laboratories, Inc. v. Clorox Co.*, 202 F.R.D. 410, 414 (D.N.J.2001) (privilege extended to third-party agents if confidential communications are made for the purpose of gaining legal advice from the attorney). The court in *Kovel* set out four factors that must be met for the attorney-client privilege to extend to third parties: 1) third party must be an agent of the attorney; 2) third party must facilitate the communication between the attorney and the client for legal advice; 3) communications with the third party must be kept confidential; 4) the privilege must not be waived. *Kovel* 296 F.2d at 921. Therefore, the presence of a third party, so long as it is assisting the attorney with a complicated matter, does not destroy the privilege. *See id.* In *Kovel*, the presence of an accountant was found necessary for effective communication between the client and the attorney. *Id.* at 922. Thus, the privilege permits consultation with others to render adequate legal advice. *Id.*

In *United States v. Ackert*, 169 F.3d 136 (2d Cir.1999), the court declined to follow *Kovel* by distinguishing the cases on the facts. *Ackert*, 169 F.3d at 140 (after bringing an investment opportunity to a company, an investment banker discussed the implications of the proposal with the company's in-house counsel). *See also United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir.1981)(attorney-client privilege is not available when advice given by attorney is

business advice not legal advice); *In re Grand Jury Investigation,* 842 F.2d at 1224 (court found that the attorney-client privilege did not protect documents given to an attorney for purposes of tax preparation); *Bankers Insurance Company v. Florida Department of Insurance and Treasurer,* 755 So.2d 729, (Fla.App.2000) (attorney-client privilege did not extend to third party because attorney-client relationship was not yet formed as to the investigation performed by the third party).

However, in factual situations similar to *Kovel,* courts have extended the attorney-client privilege to third party communications. *See In re Copper Market Antitrust Litigation,* 200 F.R.D. 213, 219–220 (S.D.N.Y.2001) (public relations firm hired by company was found to be an agent of the client, thus communications with inside and outside counsel were protected by the attorney-client privilege); *Byrnes v. Empire Blue Cross Blue Shield,* No. 98Civ.8520, 1999 WL 1006312 (S.D.N.Y. 1999) (consultant was involved in the same case the attorney had been hired to represent the client in, thus communications that assisted the attorney in rendering legal advice were protected by the attorney-client privilege).

■ In the instant case, the Official Committee bears the burden of proving that the advice given to the Ad Hoc Committee by Houlihan is protected by the attorney-client privilege. It is true that the attorney-client privilege does not always extend to third parties. However, based on case law, it is evident that the privilege does extend to third parties in situations such as the one before this court. Here, according to the Engagement Letter which was offered by the Official Committee, Houlihan was retained by Orrick who was acting as counsel to the Ad Hoc Committee. The attorney-client

relationship between Orrick and the Ad Hoc Committee was already established at that time, so Houlihan was Orrick's agent for the purpose of rendering legal advice to the Ad Hoc Committee. Houlihan was necessary for Orrick to effectively communicate with the Ad Hoc Committee as to what legal options were available after Tri–State defaulted on the 11% Notes. As expressed in the Engagement Letter, all information was considered confidential. However, there is a question as to whether the privilege was waived by offering Mr. Rosen as an expert witness. This issue will be discussed after the work product doctrine is considered.

*Work Product Doctrine*

■ The burden initially rests on the party asserting the work product doctrine to prove that the documents were prepared in anticipation of litigation. *See Auto Owners Ins. Co. v. Totaltape, Inc.,* 135 F.R.D. 199, 201 (M.D.Fla.1990). The burden then shifts to the party seeking discovery to show just cause to invade the adversary's work product. FED. R. CIV. P. 26(b)(3).

■ *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) is the seminal case for the work product doctrine. The Court in *Hickman* recognized that attorneys must "work with a certain degree of privacy free from unnecessary intrusion by the opposing parties and their counsel." *Id.* at 510, 67 S.Ct. 385. Work product includes an attorney's "interviews, statements, memoranda, correspondence, [and] briefs." *Id.* at 511, 67 S.Ct. 385. The work product doctrine has been extended to work product produced by an attorney's agent. *See United States v. Nobles,* 422 U.S. 225, 238–239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). While modified by Federal Rule of Civil Procedure 26(b)(3) ("Rule 26(b)(3)"), mental impres-

sions in anticipation of litigation are still protected from discovery. *See* FED. R. CIV. P. 26(b)(3). Documents and tangible things created in anticipation of litigation are only subject to discovery if the party seeking discovery can show a substantial need for the materials and cannot without undue hardship get a substantial equivalent of the materials. *See id.*

■ In this case the Official Committee must first prove that the information they wish to protect from discovery was prepared in anticipation of litigation. According to the Engagement letter, Bankruptcy was contemplated at the inception of Houlihan's work on the Tri–State matter. While Bankruptcy is not entirely litigation, it is an adversarial proceeding, particularly when considering the rights of the debtor versus the rights of an unsecured creditor. Thus, the documents in question were created in anticipation of Bankruptcy and "in anticipation of litigation." Since the Official Committee has met its burden, in order for the requested information to be subject to discovery, Tri–State must show ample justification to invade the Official Committee's work product.

### Waiver/Exception—Expert Witnesses

Federal Rule of Civil Procedure 26 ("Rule 26") provides specific discovery rules regarding materials given to and opinions held by expert witnesses. *See* FED.R.CIV.P. 26. Expert witnesses must be disclosed to adverse parties along with a report that includes a statement "of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions ..." FED.R.CIV.P. 26(a)(2)(B). Additionally, "A party may depose any person who has been identified as an expert whose opinions may be presented at trial." FED.R.CIV.P. 26(b)(4).

The scope of the expert witness discovery rules has been the subject of many court opinions, particularly since the 1993 amendments. An Advisory Committee Note accompanying the 1993 amendments has served as justification to expand the scope of the expert witness discovery rule, beyond what the expert witness used in forming his/her opinion, to include any information the expert witness received from the party he/she was hired by. *See In re Pioneer Hi–Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed.Cir.2001); *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 28–29 (W.D.N.Y.2002)(Rule 26(a)(2)(B) requires disclosure of core work product and other protected material supplied by a party to its testifying expert); *Johnson v. Gmeinder*, 191 F.R.D. 638, 649 (D.Kan.2000) (disclosure to testifying expert waives privilege). The Advisory Committee's Note states, because of the new obligations required by the 1993 amendments, "litigants should *no longer* be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied on by the expert— are privileged or otherwise protected from disclosure when such persons are testifying or being disposed." FED.R.CIV.P. 26 Advisory Committee's Note to 1993 Amendment, emphasis added.

According to *In re Pioneer*, the 1993 amendments "make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report." *In re Pioneer Hi–Bred Int'l, Inc.*, 238 F.3d at 1375. The court in *Johnson* held that when an expert witness has read or reviewed privileged materials before or in connection with formulating

their opinion, the expert witness is deemed to have "considered" the materials to satisfy Rule 26(a)(2)(B). *Johnson,* 191 F.R.D. at 649.

Additionally, disclosure of information to an expert witness "assumes that privileged or protected material will be made public" and effectively works as a waiver the attorney-client privilege. *In re Pioneer Hi-Bred Int'l, Inc.,* 238 F.3d at 1375–1376. The court in *Herman* also found that Rule 26(a)(2)(B) requires disclosure not only of work product but also "other privileged or protected material, supplied by the party to its testifying expert." *Herman,* 207 F.R.D. at 29. Even the courts requiring the expert witness to have actually reviewed the materials before they are subject to the discovery rule, put the burden on the party resisting discovery to prove that the expert witness did not read or review any of the materials. *See United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co.,* 97Civ6124, 98Civ3099, 2002 WL 15652 (S.D.N.Y.2002).

Policy considerations support this interpretation of the 1993 amendments to Rule 26. Courts must be careful to not allow the testifying expert's opinion to be a conduit for the attorney's opinion or allow the testifying expert to be influenced by the attorney or non-testifying experts. *See Johnson,* 191 F.R.D. at 646. Without discovery of these types of materials, there would not be "the opportunity for a full and fair cross-examination of the expert witness." *Id.* Last, the "bright-line" application of this rule affords the parties and their counsel the opportunity to know before trial what materials are discoverable. *See id.*

■ In this case, by offering Mr. Rosen as an expert on the valuation issue, the Official Committee has waived much of the protection it could have received in the materials received by Mr. Rosen because he is a testifying expert. The plain meaning of Rule 26(a)(2)(B) demands this result and trumps the protections afforded by the attorney-client privilege and the work product doctrine.

However, the court will review each piece of requested discovery material, as some materials may still be protected. According to the record Mr. Rosen has not been exposed to every piece of material requested.

*Mr. Rosen's Deposition testimony:*

Objection # 1 (Page 34, lines 6–21): As a testifying expert, any communications with or information given to and by Mr. Rosen would be discoverable.

Objection # 2 (Page 34, lines 23–25 & page 35, lines 2–3): Same as objection # 1, discoverable.

Objection # 3 (Page 35, lines 18–25): Same as objection # 1, discoverable.

Objection # 4 (Page 38, lines 8–13): Same as objection # 1, discoverable.

Objection # 5 (Page 44, lines 5–11): Same as objection # 1, discoverable.

Objection # 6 (Page 46, lines 14–21): Same as objection # 1, discoverable. Additionally, Mr. Rosen's recommendation as to whether or not to file the involuntary petition would be considered an opinion or a basis for his opinion regarding his expert valuation, thus it is discoverable.

Objection # 7 (Page 59, lines 10–19): Same as objection # 6, discoverable.

Objection # 8 (Page 61, lines 9–25; page 62, lines 2–7): Same as objection # 6, discoverable.

Objection # 9 (Page 63, lines 21–25): Same as objection # 6, discoverable.

Objection # 10 (Page 64, lines 10–15): Same as objection # 1, discoverable.

Objection # 11 (Page 64, lines 19–22): Same as objection # 6, discoverable.

Objection # 12 (Page 65, lines 5–15): Same as objection # 1, discoverable.

Objection # 13 (Page 65, lines 22–25; page 66, lines 2–4): Same as objection # 6, discoverable.

Objection # 14 (Page 66, lines 5–14): Same as objection # 6, discoverable.

Objection # 15 (Page 66, lines 15–23): To the extent that any recommendation would include filing a plan (or not filing a plan) which includes a valuation, such a recommendation would not be protected, thus it would be discoverable.

*Privilege log:*

The following Bates numbers are discoverable because Mr. Rosen was either a recipient or the sender of the communication: Comm 02449–02454; Comm 02455–02456; Comm 02465; Comm 02575–02583; Comm 02584–02588; Comm 02589–02593; Comm 02589–02593; Comm 02594–02598; Comm 02599; Comm 02635; Comm 02718; Comm 02719–02732; Comm 02733; Comm 02734–02736 (Items 1, 2, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, and 16 on the Privilege Log). The following Bates numbers would be discoverable because Andy Mitchell, who did some of the underlying work for Mr. Rosen on the Tri–State matter, was the sender: Comm 02457–02464 (Item 3 on the Privilege Log).

The following Bates numbers are not discoverable, to the extent that Mr. Rosen did not receive them, send them or have knowledge of them, because according to the Privilege Log they were between attorneys within Orrick and with an Official Committee member: Comm 02709–02713; Comm 02714–02717; Comm 02737–02739; Comm 02740–02743 (Items 11, 12, 17, and 18 on the privilege log). If any of these communications were later forwarded to Mr. Rosen, then they would be discoverable. However, there is nothing in the record indicating such an occurrence.

*Documents Created by Attorneys After or In Connection With Debtor's Motion:*

This is a very general request to compel a very general objection. To the extent that a document was given to or created by Mr. Rosen, it would be subject to discovery.

Tri–State's Motion to Compel the Deposition Testimony of David Rosen of Houlihan Lokey Howard and Zukin and Seeking the Production of Documents Withheld from Production is granted in part, denied in part.

An order in accordance with this Memorandum Opinion will be entered.