MONSANTO COMPANY, Plaintiff,

v.

AVENTIS CROPSCIENCE,
N.V., Defendant.

No. 4:00 CV 01915 ERW.

United States District Court,
E.D. Missouri,
Eastern Division.

Oct. 10, 2002.

See also 2003 WL 32095130.

Jeanine R. Bermel, Thomas J. DeGroot, Joseph P. Conran, Husch and Eppenberger, LLC, St. Louis, MO, Michael E. Lee, John F. Lynch, Susan K. Knoll, Steven G. Spears, Howrey and Simon, Houston, TX, Daniel T. Shvodian, Howrey and Simon, Menlo Park, CA, for plaintiff.

H. Jonathan Redway, Eric H. Weisblatt, R. Danny Huntington, Regis E. Slutter, Ronni S. Jillions, Susan M. Dadio, Barbara Webb Walker, Timothy A. Molino, Burns and Doane, Alexandria, VA, Lisa A. Pake, Haar and Woods, LLP, St. Louis, MO, Timothy G. Barber, Bradley C. Morris, Womble and Carlyle, Charlotte, NC, for defendant.

John Gianoulakis, Robert A. Useted, David A. Castleman, Maria Hahalis, Kohn and Shands, St. Louis, MO, for movant.

### MEMORANDUM AND ORDER

WEBBER, District Judge.

Before the Court is Plaintiff Monsanto's Motion to Compel Production of Analysis Aventis Conducted on Mon810 Corn [doc. # 176]. For the following reasons, that motion is granted.

## I. FACTUAL BACKGROUND

Monsanto sought declaratory relief in this Court that would make four United States Patents assigned to Aventis unenforceable. They also requested this Court to declare that Monsanto's selling Mon810 corn does not infringe the four patents. Aventis counterclaimed for patent infringement.

One of the key issues in this litigation is the size of the Bt gene Monsanto inserted in

its Mon810 corn products. To prevail, Aventis must prove that this Bt gene has been sufficiently truncated so that it encodes a 60 to 80 kD fragment of the full length of the 130 kD Bt protein. In attempting to make its case, Aventis has sought materials from Monsanto concerning the tests Monsanto performed to characterize the Bt DNA of Mon810 corn.

Monsanto has discovered that Dr. Marc De Beuckeleer, an Aventis scientist, conducted a test of the Bt DNA in Mon810 corn (the "De Beuckeleer Test"). Monsanto began to uncover the existence of the test at the July 16, 2002 deposition of Dr. Woulter Meulemans, Aventis's Rule 30(b)(6) designee who testified about various topics relating to Aventis's infringement claims. At the deposition Dr. Meuelemans hinted at the existence of a test, but Mr. Weisblatt, Aventis's lawyer, instructed him not to answer questions related to the test on the grounds of privilege.

Monsanto has since sought discovery of the De Beuckeleer Test. Aventis has refused production of the test, arguing that the test is attorney work product undertaken in anticipation of litigation at the direction of Burns Doane Swecker & Mathis, L.L.P., one of the law firms Aventis retained.

## II.  ANALYSIS

Monsanto does not dispute the notion that the test is protected by the work product doctrine; their only argument is that Aventis waived the work product protection. Monsanto argues that Dr. Jan Leemans, Aventis's expert witness on infringement, considered the results of the De Beuckeleer test on two occasions in forming his expert opinion, first, immediately after the results were available, and secondly, in June 2002, at a meeting relating to Leemans' retention as an expert witness in this case. According to Monsanto, because Leemans considered the test, and because the test relates directly to the substance of Leemans' testimony as an expert witness, any work product protection that may have attached to the test has been waived.

A party opposing work-product protection may establish waiver by satisfying a two-part test: (1) the party must establish principles of law from which a court can conclude that waiver is proper; (2) the party must establish the facts that are necessary to support a finding of waiver under those legal principles. *Johnson v. Gmeinder*, 191 F.R.D. 638, 644 (D.Kan.2000). Thus, contrary to the doctrine of attorney-client privilege, the party seeking to establish waiver carries the burden of persuasion on the waiver issue. *See id.*

Rule 26 of the Federal Rules of Civil Procedure governs the disclosure of expert testimony. The Rule requires a party retaining an expert witness to disclose that expert's written report to the adversary. *See* Fed.R.Civ.P. 26(a)(2)(B). The expert's report must contain the data or other information the witness considered in forming his opinions. Both parties here agree that the overwhelming majority of courts have taken the language of Rule 26 to mean that providing otherwise protected materials to a testifying expert who considers them in forming an expert opinion generally waives the protection, whether the expert actually relies on the information or not.[1]

The parties, differ, however, on the significance of the fact that Dr. Leemans worked in differing roles for Aventis. He is claimed inventor on the patents-in-suit, and he served in progressing roles at Aventis as a Research Director (1987–1994), Managing Director (1995–1997), and Member of the Board of Directors (1996–2000). Monsanto claims that when Aventis chose to use Dr. Leemans, a former employee, as a testifying expert, it assumed the risk that it would waive the work product privilege with respect to anything Leemans considered in his non-expert capacity of employment that related to the substance of his expert testimony.

Monsanto principally relies on *Western Resources, Inc. v. Union Pac. R.R.*, 2002 WL 181494 (D.Kan.2002).[2] That case involved an

---

**1.** *See, e.g., In re Pioneer Hi–Bred International,* 238 F.3d 1370, 1376 (Fed.Cir.2001) (applying Eighth Circuit law); *Johnson v. Gmeinder,* 191 F.R.D. 638, 644 (D.Kan.2000). In addition, both parties read the 1993 amendments to Rule 26 of

the Federal Rules of Civil Procedure as clarifying this point.

**2.** The parties have not cited, and the Court is unable to find, any Eighth Circuit case address-

individual, Crowley, whose role evolved from consultant to testifying expert. He had consulted on issues in anticipation of litigation from 1990 until 1999. In late 1999, the company decided that it would designate Crowley as a testifying expert witness. The plaintiff moved to compel discovery of the materials Crowley authored or reviewed during his employment as a consultant. The defendant resisted, arguing that only the specific data Crowley considered in drafting his export report were discoverable, and that materials he reviewed while a consultant were protected by work product immunity. The plaintiff, like Monsanto, countered, insisting that all Crowley's prior work as a consultant became fair game when he was retained as a testifying expert. The crux of the argument against waiver was that Crowley didn't actually consider, in writing his expert report, any of the materials he viewed while he was a consultant.

The Kansas District Court had determined that an expert is deemed to have considered materials for Rule 26(a)(2)(B) purposes if the expert has " 'read or reviewed the privileged materials before or in connection with formulating his or her opinion.' " *Western Resources, Inc. v. Union Pac. R.R.*, 2002 WL 181494 at *9 (D.Kan.2002) (quoting *Johnson v. Gmeinder*, 191 F.R.D. 638, 647 (D.Kan. 2000)). The expert is deemed to consider the materials under this definition even if he testifies under oath that he didn't actually consider the disputed materials in forming his opinion. *Western Resources*, 2002 WL 181494 at *9.

Faced with those arguments, the defendant in *Western Resources* still argued that *Johnson* shouldn't apply, because the protected materials the *Johnson* expert considered were factually related to the information contained in the subsequent expert opinion, while the documents Crowley considered in his consultative role were very different.

To resolve this issue, the *Western Resources* court turned to *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57 (S.D.N.Y.1997). The court in that case divided the contested documents into groups,

and concluded that it would not compel disclosure of documents "having no relation to the expert's role as an expert ... but that any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." *Id.* at 62. The court held that certain documents had to be produced because it was not clear whether the expert reviewed them "solely as a consultant or whether they informed his expert opinion as well." *Id.*

Based on *B.C.F. Oil,* the *Western Resources* court acknowledged that it might not ever know for certain if Crowley reviewed certain documents as a "behind the scenes consultant" or whether those documents formed his expert opinion, but found at a minimum, an ambiguity on that point. *Western Resources, Inc. v. Union Pac. R.R.*, 2002 WL 181494 at * 14. Based on this finding, the *Western Resources* court ordered the defendant to produce every document which related to the facts and opinions Crowley expressed in his expert report.

■ *Western Resources* and *B.C.F. Oil* teach then, that a court need not compel disclosure of materials an expert considered in his consultative capacity (i.e. before he was designated as a testifying expert) that have no relation to the expert's role as an expert. When, however, the subject matter of those materials relates to the facts and opinions the expert expressed in his report, the courts should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion. In most instances, if the subject matter directly relates to the opinion in the expert report, there will be at least an ambiguity as to whether the materials informed the expert's opinion. This court concludes that this analysis is persuasive. It takes from the proferred expert the subjective, undeterminable conclusion that a document was not "considered." It is important to keep firmly in mind that this is a discovery issue, not a submissibility of evidence question. The expert to which

ing the narrow issue this Court faces. The Court however, finds the reasoning adopted by other

District Courts persuasive on this issue.

the report was considered or reviewed may be tested by subsequent witness examination.

■ Based on these considerations, the Court finds that Monsanto has met its burden of proving that Aventis waived the work product immunity with respect to the De Beuckeleer Test. The subject matter of his testimony is the characteristics of Mon810 corn in light of the patents-in-suit. The De Beuckeleer Test results treat the issue of whether or not Mon810 infringed Aventis's patents. There is no question, then, that the test results directly relate to the subject matter of Dr. Leemans' expert report in this case. Indeed, Aventis does not dispute this point.

Instead, Aventis insists that Dr. Leemans did not, for Rule 26(a)(2)(B) purposes, "consider" the De Beuckeleer Test results in preparing his expert report because the results were communicated to him in only in his capacity as an Aventis employee. In other words, Aventis is suggesting that someone mentioned the test results to Dr. Leemans while he was a member of Aventis's board of directors, but after his service on the board ended and he was retained as a testifying expert, no one mentioned the test to him again (except the reference by Dr. Meulemans), and he didn't think about the test when giving his expert report. There are several problems with Aventis's position. First, the *Western Resources* court specifically recognized that an expert is deemed to have considered information for Rule 26(a)(2)(B) purposes if the expert " 'read or reviewed the privileged materials *before* or in connection with formulating his or her opinion.' " *Western Resources, Inc. v. Union Pac. R.R.*, 2002 WL 181494 at *9 (D.Kan. 2002) (quoting *Johnson v. Gmeinder*, 191 F.R.D. 638, 647 (D.Kan.2000)) (emphasis added). Neither the *Western Resources* nor the *B.C.F. Oil* courts premised their holdings in those cases on the moment the expert got the information. Indeed, in both cases, the courts ordered disclosure of materials the expert obtained before he was retained as a testifying expert, and inferred from the surrounding circumstances that the subject matter of those materials sufficiently related to the ultimate expert report. The courts then reasoned from that finding to the fact that there was at least an ambiguity as to wheth-er the expert's opinion was informed by the materials he received before he was retained as a testifying expert. The ultimate question, then, is not when Dr. Leemans found out about the test, but whether the test sufficiently relates to his expert report, and there is at least an ambiguity as to whether the test informed his opinion.

As Monsanto points out, it is difficult to believe that the De Beuckeleer Test did not inform Leemans' opinion in some fashion. Aventis retained him to testify about the characteristics of Mon810 corn and whether it infringes Aventis's patents. The De Beuckeleer test analyzed this very issue.

Secondly, Monsanto has established, through the deposition of Dr. Meulemans, that there is at least an ambiguity as to whether the test results informed Dr. Leemans' opinion. In deposing Dr. Meulemans, Aventis's Rule 30(b)(6) designee, and referring to a June 2002 meeting, Mr. Spears, counsel for Monsanto, engaged in the following colloquy with the witness.

Q: Were there any oral communications with Dr. Leemans with respect to results of testing done to characterize Mon810 corn that you are aware of?

A: Yes

Q: And did these communications disclose the substance of the written communication that you received from Dr. De Beuckeleer of the results of testing done to characterize Mon810 corn?

A: I believe so.

Q: Who was involved in those communications with Dr. Leemans, the oral communications?

A: Myself, Jan Van Rompaey, and our attorneys.

Meulemans Deposition at 109.

Mr. Weisblatt later asked Dr. Meulemans if the substance of the De Beuckeleet Test was communicated to Dr. Leemans while Leemans was employee, and Meulemans replied "Yes." *Id.* at 119. Then Mr. Spears immediately asked Dr. Meulemans:

Q: Was it also communicated to him while he was not an employee of Aventis Cropscience, N.V.?

A: I believe the substance was really communicated to him while he was not an employee.

*Id.*

Aventis responds by presenting an affidavit of Dr. Meulemans, who insists he misunderstood what Mr. Spears meant by "substance," and points out that Meulemans later corrected that misunderstanding by saying, "I don't believe the substance, details, were actually discussed at that communication," and that he thought only general references were discussed at that meeting. *See* Meulemans Deposition at 120.

Even though Meulemans now insists that he only made a general reference to the De Beuckeleer Test at this June 2002 meeting, the central issue is not when the results were disclosed to Dr. Leemans, but whether there is at least an ambiguity as to whether the results ultimately informed his opinion. The parties agree at least that the substance of the test was disclosed to Dr. Leemans while he was an employee. Later in June 2002, Dr. Meulemans at least made a reference to the test.

This Court recognizes the importance of the work product protection in promoting the operation of the adversary system by "ensuring that a party cannot obtain materials that his opponent prepared in anticipation of litigation." *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir.1997). There is, however, a countervailing consideration in cases involving expert testimony. The Federal Rules Advisory Committee reminds us in its notes on the 1993 Amendments to Rule 26 that an expert report must "disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions." Fed.R.Civ.P. 26 advisory committee's note. Given this requirement, the committee recognized, parties should not be able to argue that "materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." *Id.*

This Court must apply the work product doctrine "in a commonsense manner and in light of reason and experiences determined on a case by case basis." *Pittman*, 129 F.3d at 988. Dr. Meulemans' deposition established that Dr. Leemans considered the De Beuckeleer test at least twice before he prepared his expert report. Moreover, there is a direct correlation between the De Beuckeleer Test and the subject matter of Dr. Leemans' expert testimony. Indeed the De Beuckeleer Test results focus on the exact scientific findings that are central to the legal arguments the parties here have advanced. These facts lead the Court to conclude that there is at least an ambiguity as to whether the test results ultimately informed Dr. Leemans' expert opinion in this case.

Therefore,

**IT IS HEREBY ORDERED** that Monsanto's Motion to Compel Production of Analysis Conducted By Aventis on Mon810 Com and Considered by Aventis's Expert [doc. # 176] is **GRANTED**.

**IT IS FURTHER ORDERED** that Monsanto's Motion for Leave to File a Supplemental Brief in Support of its Motion to Compel [doc. # 225] is **DENIED** as **MOOT**.