B.H., a minor child, through her natural
parents and guardians, Billy and Jackie
HOLDER, et al., Plaintiffs,

v.

GOLD FIELDS MINING CORP., et al.,
Defendants/Third–Party Plaintiffs,

v.

United States of America, et al.,
Third–Party Defendants.

No. 04CV564 JOEPJC.

United States District Court,
N.D. Oklahoma.

Dec. 7, 2005.

Judy Garner Vanderflute, pro se.

Bradford D. Barron, Richard D. Gibbon, Zachary T. Barron, Gibbon Barron & Barron PA, Kris Ted Ledford, Patrick Hoyt Kernan, Kernan & Ledford, Tulsa, OK, Carolyn Peddy Courville, David S. Siegel, Michael P. Fritz, Stephen Daily Susman, Vineet Bhatia, Susman Godfrey LLP, Houston, TX, for Plaintiffs.

Archer Scott McDaniel, Chris A. Paul, Robert Joseph Joyce, Stacy L. Acord, David Michael Vonhartitzsch, Joyce Paul & McDaniel PC, Karissa K. Cottom, Terrance Lane Wilson, Hall Estill Hardwick Gable Golden & Nelson, Tulsa, OK, Kirk Forbes Marty, Mark Douglas Anstoetter, Rebecca Joy Schwartz, Stanley D. Davis, Shook Hardy & Bacon LLP, Kansas City, MO, Charles David Goerisch, Richard A. Ahrens, Robert J. Will, Thomas P. Berra, Jr., Lewis Rice & Fingersh LC, Saint Louis, MO, for Defendants/Third–Party Plaintiffs.

Bill Robins, III, Heard Robins Cloud Lubel & Greenwood LLP, Santa Fe, NM, Shelley Lambert Carter, Stephen Richard Ward, Conner & Winters, Loretta Finiece Radford, Neal B. Kirkpatrick, United States Attorney's Office, Ronald N. Ricketts, Gable & Gotwals, Barry Greg Reynolds, Kelley Gilbert Loud, Titus Hillis Reynolds Love Dickman & McCalmon, Tulsa, OK, Jason S. Patil, US Department of Justice, Civil Division Environmental Torts, Washington, DC, John Anthony Nicholas, Blanchard Robertson Mitchell & Carter PC, Joplin, MO, for Third–Party Defendants.

## *ORDER*

CLEARY, United States Magistrate Judge.

This matter came before the Court for hearing on September 26, 2005, on Plaintiffs' Motions [Dkt. ## 265 & 269] to Compel Production of Documents Based on Testamentary (sic) Use of Work Product.[1] At the hear-

---

1. The Court understands these motions to relate to "testimonial" use of work product; otherwise, the case has taken a dramatic and alarming turn.

ing, Plaintiffs for the first time presented the Court and Defendants with 14 exhibits to be used in their presentation to the Court. Defendants objected thereto. The Court allowed Plaintiffs' counsel to use the documents as an aid in organizing and presenting his arguments, but because of their untimely submission, these exhibits will not be filed of record and will not be considered for substantive purposes. Subsequent to the hearing, both sides submitted supplemental legal authority on the issue before the Court.

Plaintiffs contend that by listing certain consultants as witnesses on their Preliminary Witness List, Defendants Blue Tee Corp. ("Blue Tee"), Gold Fields Mining Corp. ("Gold Fields") (together, "BT/GF") and The Doe Run Resources Co. ("Doe Run") waived work-product protection on documents reviewed and/or authored by those witnesses on topics related to their proposed testimony. Defendants assert that merely listing these individuals as *possible* witnesses does not waive work-product protection, and that any waiver would not occur until the witness actually testifies at trial in a way that implicates or discloses work-product material.

Plaintiffs' motion targeted ten individuals whom Defendants listed as possible witnesses: Gary Krieger, David Hinrichs, Gary Uphoff, John Aronson, Carey Foulk, David Jackson, David Stewart, Richard Adams, Terrance Faye and Walter Nowotny. Defendants have since removed six of these individuals from their subsequent Witness List [Dkt. # 278] and Amended Preliminary Witness List [Dkt. # 335].[2] In addition, Defendants' Response to Plaintiff's Motion to Compel clarified that the Richard Adams listed as a potential witness is not the "Adams" shown as a recipient of various privileged documents on Defendants' Privilege Logs. Thus, the Motion to Compel has been narrowed to the direct testimony of Gary Uphoff ("Uphoff"), Terrance Faye ("Faye") and Walter Nowotny ("Nowotny").[3]

**2.** The later witness lists eliminated the following individuals as potential witnesses: Krieger, Hinrichs, Aronson, Foulk, Jackson and Stewart.

**3.** Plaintiffs contend that the listing of Faye and Nowotny as witnesses waives attorney-client

## DISCUSSION

### A. Applicable Law

 In a diversity case such as this, issues related to the attorney-client privilege are controlled by state law while issues related to work product are controlled by federal law. *Frontier Refining, Inc. v. Gorman–Rupp Co.,* 136 F.3d 695, 702 n. 10 (10th Cir.1998).

Attorney-client privilege must be analyzed under applicable Oklahoma law. Under that provision:

> B. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> 1. Between the client or a representative of the client and the client's attorney or a representative of the attorney;
>
> 2. Between the attorney and a representative of the attorney;
>
> 3. By the client or a representative of the client or the client's attorney or a representative of the attorney to an attorney or a representative of an attorney representing another party or a representative of an attorney representing another party in a pending action and concerning a matter of common interest therein;
>
> 4. Between representatives of the client or between the client and a representative of the client; or
>
> 5. Among attorneys and their representatives representing the same client.

12 Okla. Stat. § 2502(B) (2002).

 Under Oklahoma law, the party claiming attorney-client privilege must establish that a privilege applies and that the documents are protected from production. *Sinclair Oil Corp. v. Texaco, Inc.,* 208 F.R.D. 329, 331–32 (N.D.Okla.2002). Because courts

privilege as to certain documents. Faye and Nowotny are both attorneys. Faye is counsel for BT/GF; Nowotny is a former vice-president of Doe Run.

generally require the proponent of the privilege to establish each element of the privilege, in theory this would require the proponent to establish lack of waiver. Edna S. Epstein, The Attorney–Client Privilege and the Work–Product Doctrine 37–38 (American Bar Assoc. 4th ed.2001). "As a practical matter, however, it is generally assumed that no waiver has occurred unless the party seeking discovery contends that it has." *Id.* at 38.

■ Work-product is analyzed under federal law. *Frontier Refining,* 136 F.3d at 702, n. 10. The U.S. Supreme Court recognized work-product protection based on the theory that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work-product doctrine protects materials prepared by attorneys themselves, and also by their agents. *United States v. Nobles,* 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

Work-product protection is not absolute. For example, Rule 26(b)(3) of the Federal Rules of Civil Procedure permits discovery of work-product materials where the party seeking discovery "has substantial need of the materials in the preparation of the party's case" and is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). This provision applies to "ordinary" work-product; discovery of the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation" is afforded greater protection. *Id.; see Resolution Trust Corp. v. Mass. Mut. Life Ins. Co.,* 200 F.R.D. 183, 190–91 (W.D.N.Y.2001). Work-product protection may also be waived. *Nobles,* 422 U.S. at 239, 95 S.Ct. 2160. This waiver may come in many different circumstances. *See, Resolution Trust,* 200 F.R.D. at 191–96. *See generally,* Epstein, *supra,* at 607–41.

■ Some courts have held that the party claiming work-product protection must establish both that the protection exists *and* that it has not been waived. *E.g., Resolution Trust,* 200 F.R.D. at 191; *Granite Partners,*

*L.P. v. Bear, Stearns & Co., Inc.,* 184 F.R.D. 49, 52 (S.D.N.Y.1999). However, the majority view is that the party claiming waiver has the burden of proof on that issue. *Johnson v. Gmeinder,* 191 F.R.D. 638, 643 (D.Kan. 2000) (Party asserting waiver of work-product immunity, rather than the party asserting the work-product protection, should have the burden to establish waiver.); *Maldonado v. New Jersey ex rel. Admin. Office of the Courts—Probation Div.,* 225 F.R.D. 120, 132 (D.N.J.2004); *S.E.C. v. Buntrock,* 217 F.R.D. 441, 447 (N.D.Ill.2003); *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.,* 218 F.R.D. 125, 136 (E.D.Tex.2003); *Monsanto Co. v. Aventis Cropscience, N.V.,* 214 F.R.D. 545, 546 (E.D.Mo.2002); *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.,* 202 F.R.D. 418, 423 (E.D.Pa.2001); *In re Convergent Technologies Second Half 1984 Securities Litigation,* 122 F.R.D. 555, 565 (N.D.Cal.1988), *Aull v. Cavalcade Pension Plan,* 185 F.R.D. 618, 624 (D.Colo.1998). A party claiming waiver of work-product protection can succeed by satisfying a two-part test: (1) the party must establish principles of law from which a court can conclude that waiver is proper, and (2) the party must establish the facts necessary to find waiver under those legal principles. *Gmeinder,* 191 F.R.D. at 644.

■ Courts have held that waiver of work-product protection occurs "when the covered materials are used in a manner that is inconsistent with the protection." *Bank of America, N.A. v. Terra Nova Ins. Co.,* 212 F.R.D. 166, 170 (S.D.N.Y.2002). Testimonial use of work product is only one example of inconsistent use. Waiver can also occur by implication where fairness mandates, *Hollinger Intern., Inc. v. Hollinger, Inc.,* 230 F.R.D. 508, 516 (N.D.Ill.2005), as where a party injects the substance of work-product into litigation or other adversary proceedings, *In re Kidder Peabody Securities Litigation,* 168 F.R.D. 459, 470 (S.D.N.Y.1996), or makes a partial disclosure of work-product while seeking to maintain protection of work-product related to the same subject, *Resolution Trust,* 200 F.R.D. at 193 (Waiver found where privilege holder takes affirmative position that puts at issue the very information sought to be protected). It is the burden of the party who claims waiver to establish both

a legal and factual basis for work-product waiver. *Gmeinder,* 191 F.R.D. at 644; *Monsanto,* 214 F.R.D. at 546.

## B. Attorney–Client Privilege and Faye and Nowotny

While Plaintiffs claim waiver based on testimonial use of work-product, they also assert waiver of attorney-client privilege because Defendants have designated Faye and Nowotny as possible witnesses concerning Defendants' activities in responding to claims of the Environmental Protection Agency ("EPA"). Plaintiffs ask the Court to bar Defendants from asserting attorney-client privilege "with respect to documents sent from consultants designated as witnesses on response activities to Faye or Nowotny concerning response activities, or from Faye or Nowotny to consultants designated to testify on response activities." [4]

■■■ The client is the holder of the attorney-client privilege and, therefore, must decide whether to claim it or waive it. If the client permits his attorney to testify as to privileged communications the privilege is deemed waived. Epstein, *supra,* at 373–75. Courts have held that *indicating* a client's attorney will be a witness can be sufficient grounds to find waiver of the privilege. *E.g., Rutgard v. Haynes,* 185 F.R.D. 596, 601–02 (S.D.Cal.1999) (Plaintiff waived attorney-client privilege by "indicating" he would use attorney as a witness); *Dion v. Nationwide Mut. Ins. Co.,* 185 F.R.D. 288, 295–96 (D.Mont.1998) (Upon naming its attorney as an expert witness client assumed risk that subsequent invocation of the privilege would be abrogated.). In *Rutgard* and *Dion* it appears a more definite decision had been made than here that the attorneys would testify and what the scope of their testimony would be. The Court does not believe that listing Faye and Nowotny on a preliminary witness list is sufficient for a finding of waiver. Furthermore, resolution of pending motions in this case may greatly impact the

need for testimony from these witnesses. *Rutgard* is instructive in how a court should address this issue. While the court found a waiver of attorney-client privilege it also noted that pending motions could make the need for the attorney's testimony moot. Accordingly, the court ordered that privileged documents not be produced until pending motions had been resolved. *Rutgard,* 185 F.R.D. at 602.

The Court concludes that until summary judgment, *Daubert* and *in limine* motions in this case are resolved and the scope of testimony—if any—by Faye and Nowotny is clear, a finding of waiver is inappropriate. Once the pending motions are resolved and a final witness list filed, the Court will re-examine this issue in accordance with the procedure outlined below.

## C. Work–Product Waiver

Plaintiffs complain that Defendants intend to use documents that they claim are work-product by introducing the substance of those documents through the testimony of expert consultants posing as fact witnesses. This assertion applies chiefly to Uphoff, the remaining consultant on Defendants' witness list. Thus, the Court will focus on him in addressing the issue.

To understand Plaintiffs' plight, an examination of Uphoff's unique role in this litigation is necessary. For more than 20 years, Uphoff has served as environmental consultant to Defendants regarding claims and threatened litigation by the EPA and others related to the Tri–State Mining District. Uphoff, who is president and sole employee of Environmental Management Services in Colorado, has assisted attorneys for Blue Tee Corp. and Gold Fields Mining Co. and joint defense groups which have cooperated to defend such claims in Cherokee County, Kansas, and in Ottawa County, Oklahoma.[5] As a result, he has authored or reviewed numerous work-product protected documents listed on Defendants' privilege logs. As long as

---

**4.** To the extent Plaintiffs' Motion seeks to preclude Defendants from asserting attorney-client privilege in the future if and when Faye and Nowotny testify, it is premature.

**5.** This description of Uphoff's involvement in the Tar Creek matter is taken largely from his affida-

vit submitted in support of Defendants' Response to a motion to compel filed in *Herd v. Asarco, Inc. et al.,* Case No. 01–CV–891–SEH–PJC (hereafter, *"Herd"*) (Dkt. # 162 filed December 30, 2002).

Uphoff remained a non-testifying expert consultant no waiver issues arose; however, beginning with the *Herd* case, *Herd v. Asarco, Inc. et al.* Case No. 01–CV–891–SEH–PJC ("*Herd*"), Defendants served notice that they intended to use Uphoff in some capacity as a witness.

In *Herd* Uphoff was first described as a "non-retained *expert* witness" [*Herd,* Dkt. # 190]. Later he was listed as a *non-expert* fact witness [*Herd,* Dkt. # 539]. Uphoff's changing status—from expert consultant to non-retained expert witness and, finally, to fact witness—created a myriad of ongoing problems. First, as a *non-retained* expert Uphoff had not produced a Rule 26(a)(2)(B) expert report.[6] Thus, his expert opinions were not detailed and no supporting data was provided. Second, his expert witness role had implications for the viability of work-product protection for documents authored or reviewed by Uphoff—essentially the same issue presented in the motion under consideration here. Third, once Uphoff's status was changed from expert to fact witness, Plaintiffs suspected he would improperly offer expert opinions anyway. Before any of these issues could be resolved the *Herd* case settled.

The Uphoff/witness problem quickly reappeared in this case. As a proactive measure, the Court advised Defendants early in the case that Uphoff could not claim non-retained expert status—if he were to offer expert testimony he would have to produce a Rule 26 expert report. No such report has been served; thus, it is clear that Uphoff cannot offer expert opinion testimony in this case.

The Court now faces the problems associated with Uphoff's role as a fact witness. Defendants have listed Uphoff as a potential fact witness in this case on a variety of topics:

☐ Response activities in Tri–State Area (including Tar Creek);

☐ Historic mining methods and operations;

☐ Historic property interests;

☐ Conditions in the Tri–State Mining District (including Tar Creek Site);

☐ EPA and State activities in the Tri–State Mining District (including Tar Creek);

☐ Matters addressed in Herd depositions;

☐ All other topics listed in February 1, 2005, email from R. Joyce to K. Ledford regarding potential areas of testimony.

*Defendants (Sic) Amended Preliminary Witness List,* p. 5 [Dkt. # 335].

The February 1, 2005, email referenced above contains a wide variety of additional topics, including:

1. Actions taken by [Uphoff] and/or the PRPs [potentially responsible parties] in connection with response activities at Tar Creek, and the reasons/rationale therefore;

5. Things [Uphoff] has seen in connection with his work in the Tar Creek and in the Tri–State area (such as the fact that chat piles are moist below the surface, that chat piles are armored, that certain tailings ponds are wet, that chat loading is not dusty, etc.);

8. Where [Uphoff] and/or the PRPs believed EPA and/or state/local regulators/agencies were going wrong and why....

*Plaintiffs' Motion to Compel,* Ex. 13 [Dkt. # 265].

Defendants contend that they do not know whether Uphoff will testify at trial or what matters he will testify to if he does take the stand. They contend that these decisions cannot be made until the Plaintiffs have completed their case-in-chief. Plaintiffs argue that reserving a determination on waiver until trial will create an unmanageable and unfair procedure. If Uphoff must actually testify before the waiver determination can be made, the trial will be unreasonably disrupted and Plaintiffs will be afforded little opportunity to review and use any documents where the Court finds waiver.

Defendants also represent that if Uphoff testifies he will *not* make testimonial use of

6. The federal rules require expert reports of any witness who is "retained or specially employed to provide expert testimony." Fed.R.Civ.P.

26(a)(2)(B). Since Uphoff was not retained or employed as an expert witness, Defendants contended he was exempt from this requirement.

any document protected by the work-product doctrine. Not surprising, Plaintiffs counter that they should not be left to rely on Defendants' unilateral determination that no work-product is implicated by Uphoff's testimony. They contend that the Court should declare waiver as to documents related to the subjects that Defendants have indicated would be subjects of Uphoff's trial testimony.

█ Plaintiffs have a two-pronged burden in order to establish waiver of work-product protection: First, they must establish legal principles from which waiver may be found. Second, they must establish sufficient facts from which the court may conclude a finding of waiver is appropriate. *Gmeinder,* 191 F.R.D. at 644.

### 1. Plaintiff's First Burden: Establishing a Legal Basis for Waiver

Plaintiffs have articulated two legal bases that they contend support a finding of waiver: (1) waiver through testimonial use of work-product and (2) waiver through the principle of fairness.

█ As to the first principle, clearly a witness cannot offer testimony based on documents that he simultaneously claims are protected work-product. *Nobles,* 422 U.S. at 239–40, 95 S.Ct. 2160 (Doctrine cannot support a unilateral testimonial use of work-product.). If a witness testifies in reliance on work-product documents, a waiver of work product will be found. Therefore, Plaintiffs have articulated a legal principle—testimonial use of work-product—that can support a finding of waiver under appropriate circumstances.

Plaintiffs also seek a waiver of work-product protection on all documents relating to the subjects of Uphoff's potential testimony as described in preliminary witness lists. The policy underlying the "subject matter waiver doctrine" is the principle of fairness. The doctrine guards against a party's selective disclosure of work-product or privileged documents, *i.e.,* selecting those facts that will be revealed while concealing other harmful facts. Epstein, *supra,* at 624. *See also In re Commercial Financial Services, Inc.,* 247

B.R. 828, 846–50 (Bankr.N.D.Okla.2000) (hereafter, *"CFS"*). Plaintiffs contend that Uphoff's testimony will necessarily rely on work-product documents that he has either authored or documents authored by others that he has reviewed. They contend it would be fundamentally unfair to allow Uphoff to disclose only that information helpful to Defendants while concealing other information under a cloak of work-product protection.

█ A party cannot use work-product as a sword and at the same time invoke the work-product doctrine as a shield to prevent disclosure of the same or related materials. *CFS,* 247 B.R. at 846, n. 21; *Kidder,* 168 F.R.D. at 472–73. The doctrine of subject matter waiver is narrowly construed, but may be employed when unfairness is implicated. *CFS,* 247 B.R. at 848. In advocating subject matter waiver based on the fairness principle Plaintiffs have articulated a viable legal basis for a finding of waiver under appropriate factual circumstances and have satisfied the first prong of their burden.

### 2. Plaintiffs' Second Burden: Establishing a Factual Basis for Waiver

The Court must now determine whether Plaintiffs have established facts sufficient for a finding of waiver under the principles described above. *Gmeinder,* 191 F.R.D. at 644.

#### (a) Plaintiffs have not established a factual basis for testimonial waiver.

█ Plaintiffs first assert that Defendants' listing of Uphoff on a witness list constitutes a testimonial waiver of work-product protection. As Plaintiffs rely heavily on *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160 (1975), a close examination of that case is appropriate.

Robert Lee Nobles ("Nobles") was one of several persons charged in connection with a 1973 Los Angeles bank robbery. At trial an eyewitness, Gary Hoffman ("Hoffman"), identified Nobles as one of the robbers. Following Hoffman's testimony the defense called its investigator to the stand for the purpose of impeaching Hoffman using prior statements he had made to the investigator.[7]

---

7. For example, Hoffman allegedly told the investigator that "all Blacks look[ed] alike" to him.

*U.S. v. Brown,* 501 F.2d 146, 158 (9th Cir.1974).

These statements were contained in the investigator's report prepared for the defense. The defense refused a prosecution demand for this report asserting work-product protection. The court ruled that unless the defense permitted the prosecution to review those portions of the investigator's memorandum relating to Hoffman's statements, the investigator would not be allowed to testify. The court held that Nobles waived work-product protection on the investigator's memo to the extent that the investigator testified about its contents. *Nobles,* 422 U.S. at 225, 95 S.Ct. 2160. In order to limit disclosure of the memo only to those portions referred to in the investigator's testimony, the trial court proposed that a copy of the investigator's report be "inspected and edited by the court in camera" and submitted to the prosecution at the completion of the investigator's testimony.[8] When defense counsel still refused to produce the report, the court refused to allow the investigator's impeachment testimony. Nobles was convicted and appealed. The Ninth Circuit Court of Appeals reversed the trial court, holding that conditioning the investigator's testimony on production of his report was reversible error. The U.S. Supreme Court disagreed and reversed the Ninth Circuit, agreeing with the trial court that Nobles had waived work-product protection of the investigator's report to the extent that his witness testified about its contents. *Nobles,* 422 U.S. at 239, 95 S.Ct. 2160.

A close reading of *Nobles* shows that it does not support Plaintiffs' contention as to testimonial waiver. In *Nobles* the court found waiver *at the time the witness actually testified:*

> THE COURT: The Court is going to rule as follows: first of all the government may not have the memorandum *until the witness has taken the stand and has indicated the particular impeaching testimony* which was the last part of Mr. Hoffman's testimony relative to his inability to distinguish between people of the black race. And if he does make such a statement, if

he and [the investigator] make such a statement then I believe the government is entitled to an examination of the memorandum—*not before that time—but after that time, after he has completed his entire testimony....*

*United States v. Brown,* 501 F.2d 146, 158 n. 3 (9th Cir.1974) (Kilkenny, J. concurring and dissenting) (emphasis added).

Later, the court again emphasized that its ruling was based on a waiver created by the witness' actual testimony:

> THE COURT: We are not talking about pretrial discovery. *This is post testimony discovery....*

*Id.* at 159 n. 5 (emphasis added).

The Supreme Court agreed: "Respondent, by electing to present the investigator as a witness, waived the privilege *with respect to matters covered in his testimony.*" *Nobles,* 422 U.S. at 239, 95 S.Ct. 2160 (emphasis added). Thus, *Nobles* found a testimonial waiver when a witness actually testifies in reliance on otherwise protected information. Here, Uphoff has not yet testified at trial. Furthermore, *without actual testimony* the Court has no factual basis on which to make a determination of waiver or scope of waiver.[9] Thus, a finding of waiver on this basis must be denied.

### (b) Plaintiffs have not established a factual basis for subject matter waiver.

■■■ Plaintiffs' also seek a finding of subject matter waiver based on the "fairness doctrine." This argument fails for the same reason that Plaintiffs' testimonial waiver argument fails. Plaintiffs argue that it is unfair to allow Uphoff to testify while still asserting work-product protection on documents that appear related to the subjects of his testimony. While the Court is not unsympathetic to Plaintiffs' position, the argument based on the fairness principle has the same flaw as their argument for testimonial waiver—the mere listing of Uphoff as a potential witness is not factually sufficient to

---

**8.** The court proposed to undertake the *in camera* inspection and editing in order to excise any portions of the memo not relevant to the impeachment of the eyewitness. *Brown,* 501 F.2d at 159.

**9.** Nor have Plaintiffs submitted deposition testimony from Uphoff that would provide a factual basis for a finding of waiver.

establish waiver. *See CFS*, 247 B.R. at 846 n. 21 ("The issue of fairness does not arise until the partial disclosure of privileged information is placed *at issue* in the case by the disclosing party, *i.e.*, the partially disclosed information is used as a 'sword'.") The Court cannot conclude at this time that by listing Uphoff on a preliminary witness list the Defendants have partially disclosed protected work-product and placed at issue in the case all documents related to the subject matters Uphoff may testify about. Again, Plaintiffs have failed to meet the second prong test for waiver and their motion on this basis must be denied as well.

### D. Developing a procedure for re-examining these issues before trial.

The Court is confident that it has not heard the last of this matter, and it has concerns about Uphoff's role as a witness and the coincident work-product implications. Uphoff is not a simple fact witness. He is not, for example, the ordinary by-stander to an auto accident, prepared to testify as to what he saw. Uphoff's entire involvement with this case arises from his environmental expertise. He became involved with these Defendants and the Tri–State Mining District as an expert consultant. As a result, Uphoff's observations concerning Tar Creek are filtered through the prism of his expertise. Furthermore, because Uphoff has reviewed so much of other consultants' work-product during his long association with this matter, the Court has concerns that Uphoff's observations may be based as much on what he recalls from protected sources as on what he has seen first-hand. In short, the circumstances presented here create significant difficulties in protecting Defendants' legitimate privileges and guaranteeing Plaintiffs timely access to information where waiver has occurred through a process that will not disrupt the flow of evidence at trial.

*Nobles* provides insight into how a court might deal procedurally with a claim of waiver so as to avoid disrupting trial. Although the court in *Nobles* held that a testimonial waiver of work-product protection did not occur until there was actual testimony implicating protected documents, the court sought to deal with the issue beforehand. Indeed, once it became clear that the defendant's investigator would testify relying on information contained in a work-product protected document, the court intervened. At that point, however, the court knew the nature of the proposed testimony and could determine with precision how this testimony implicated the protected document. The undersigned believes the issues presented in Plaintiffs' motions will be revisited once it is possible to determine the nature of Uphoff's testimony and the implications for protected documents.

Rule 26 also offers guidance in dealing with these issues. Under Rule 26(a)(2), if Uphoff were proposed as a testifying expert witness—as he was in *Herd*—all documents he considered in forming his opinions would be discoverable. He would have to provide an expert report citing the data and other materials he considered. Any materials factually related to facts or opinions contained in his expert report would be discoverable. Furthermore, any question as to whether Uphoff was acting as a consultant or expert when he considered certain documents would be resolved in favor of discovery. "[A]ny ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." *B.C.F. Oil Refining, Inc. v. Consolidated Edison Company of New York, Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997), *Monsanto*, 214 F.R.D. at 547–49. The delineation between a witness' shifting roles must be clear as must the distinction between documents having no relation to an individual's role as an expert and those considered by the witness in developing his expert opinions. *Construction Industry Services Corp. v. Hanover Ins. Co.*, 206 F.R.D. 43, 52 (E.D.N.Y.2001).

The Court finds useful here the principles underlying the cases cited in the previous paragraph. The problems concerning Uphoff's role as a witness and the implication for work-product protection are problems of Defendants', not Plaintiffs', creation. The Defendants have listed their expert consultant of 20 years as a witness; thus, it is fair and reasonable that under the unusual circumstances presented here, a greater burden

should be placed on Defendants' to justify their assertion of work-product protection.

Once summary judgment, *Daubert,* and *in limine* motions in this case have been resolved, the parties should file a Final Witness List. This list shall describe *in detail* the substance of the testimony each witness is expected to offer. (Broad descriptions of expected testimony, as were contained in Defendants' preliminary witness list with respect to Uphoff, will risk a broad finding of waiver.) On the basis of the Final Witness List, should Plaintiffs seek to assert waiver of work-product protection or attorney-client privilege, Plaintiffs should then file a motion to compel identifying the specific documents on which they believe Defendants have waived protection or privilege. It will then be Defendants' burden to show that these documents do not relate to the witness' proposed testimony. The Court will resolve any ambiguity in this regard in favor of discovery. *See Western Resources, Inc. v. Union Pacific Railroad Co.,* 2002 WL 181494 at *10 (D.Kan.2002); *Messier v. Southbury Training Sch.,* 1998 WL 422858 at *2 (D.Conn. 1998). This approach will be used both as to waiver of attorney-client privilege through the testimony of Faye and Nowotny and waiver of work-product protection through the testimony of Uphoff. The goal is to provide a mechanism for resolving this complex issue in a way that assures Plaintiffs a reasonable and timely opportunity to prepare for trial, while also affording Defendants an opportunity to better decide how to use Uphoff as a witness, if at all. For this—or any process—to be efficient, the parties must undertake the responsibilities outlined above with the intent of determining the *real* disputes requiring Court assistance. Thus, Defendants must specifically detail the expected testimony of their witnesses and Plaintiffs must narrow the list of disputed documents as much as possible.

Accordingly, for the reasons set forth above, the Plaintiffs' Motions to Compel are **DENIED**. The parties are to go forward in accordance with the procedure outlined above.