IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                                        |     |                        |
|----------------------------------------|-----|------------------------|
| ARIELL GREEN,                          | )   |                        |
|                                        | )   |                        |
| Plaintiff,                             | )   |                        |
|                                        | )   |                        |
| v.                                     | )   | C.A. N15C-03-208 CEB   |
|                                        | )   |                        |
| THE NEMOURS FOUNDATION,                | )   |                        |
| trading as AI DUPONT HOSPITAL          | )   |                        |
| and ALFRED I. DUPONT                    | )   |                        |
| HOSPITAL FOR CHILDREN,                 | )   |                        |
|                                        | )   |                        |
| Defendant.                             | )   |                        |

Submitted: June 15, 2016
Decided: August 17, 2016

*Defendant's Motion to Compel
Production of Documents.*
**DENIED.**

Richard A. Zappa, Esquire, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware. Attorney for Plaintiff.

John D. Balaguer, Esquire and Christine Kane, Esquire, WHITE AND WILLIAMS LLP, Wilmington, Delaware. Attorneys for Defendant.

**BUTLER, J.**

## BACKGROUND

This is a medical negligence action in which both parties have retained expert witnesses. The parties informed the Court that the experts are largely in agreement on the standard of care. The dispute is apparently factual: at what time did the plaintiff present to the emergency room, when was she seen, what symptoms did she display at that time, etc. Resolution of these hotly disputed facts largely determines the appropriate course of treatment as allegedly agreed upon by the experts.

The defense commenced a deposition of plaintiff's expert witness. Immediately prior to commencement, defense counsel was provided a binder of documents reviewed by the expert witness. Upon a cursory inspection of the binder, however, defense counsel saw the Table of Contents including an entry for a document entitled "Work Product Memorandum" and a second one entitled "Deposition Preparation Exhibits." Defense counsel pointed out the documents to plaintiff's counsel, who immediately sought retrieval of the binder from defense counsel. After some discussion, the attorneys agreed to copy the Table of Contents page and return the binder to plaintiff's counsel. Defense counsel then filed the instant Motion to Compel, seeking production of the disputed documents if the Court found that they contained discoverable materials after an *in camera* review.

The Court has conducted an *in camera* review of the memorandum as well as the relevant law and is now prepared to rule.

The "Work Product Memorandum" is just that—a selective review of the discovery produced thus far and essentially an argument why counsel believes the facts show medical negligence. The "Deposition Preparation Outline" consists of several pages of what plaintiff's counsel believed were the likely questions the expert would be asked by defense counsel. It is noteworthy that the questions did not include proposed answers plaintiff's counsel would have liked to hear.

## ANALYSIS

This dispute calls upon the Court to analyze Superior Court Civil Procedure Rule 26(b)(6). This provision was added to our rules of civil procedure in 2014. This new provision protects communications in any form between an attorney and a "testifying" expert subject to three exceptions; opposing counsel may discover communications that:

(i)    Relate to the compensation of the expert,

(ii)    Identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed, or

(iii)    Identify assumptions that the party's attorney provided and that the expert relied upon in forming the opinions to be expressed.[1]

---

[1] Del. Super. Ct. Civ. R. 26(b)(6).

Because this is a verbatim adoption of the federal provision as enacted in 2010, reference to the history of the federal amendment and federal decisions is highly persuasive in interpreting Delaware's rules.[2]

While this issue traces its lineage further back to at least 1947 and the U.S. Supreme Court's opinion in *Hickman v. Taylor*,[3] it is sufficient for our purposes to begin by considering the 1984 decision of the Third Circuit in *Bogosian v. Gulf Oil Corporation*.[4] In that case, the Third Circuit ruled that an expert retained by the plaintiffs to opine in an antitrust case could not be ordered to turn over correspondence with the attorneys that reflected the attorney's mental impressions and "core" work product.[5] The Third Circuit overruled the trial court's decision that the work product doctrine must give way to an unfettered right to cross examination of the expert as to all materials considered by the expert, regardless of its source.[6]

---

[2] *See Crumplar v. Super. Ct. of Del.*, 56 A.2d 1000, 1007 (Del. 2012) (relying on interpretations of federal rule where Delaware Superior Court Civil Rule "substantially parallels" the language of its federal counterpart).

[3] 329 U.S. 495, 512 (1947) (recognizing "the general policy against invading the privacy of an attorney's course of preparation").

[4] 738 F.2d 587 (3d Cir. 1984).

[5] *Id.* at 595.

[6] *Id.*

This was the state of the law until the federal rules were amended in 1993. In the 1993 amendments, the drafters initiated a requirement that any expert that will be testifying at trial provide a written report detailing "a complete statement of all opinions to be expressed and the reasons therefore" and "the data or other information considered by the witness in forming the opinions."[7] The drafters of the amendment made clear that it was intended to eliminate any claim of privilege: "Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed."[8] It would certainly appear that among the other purposes sought to be achieved, the rule change was intended to overrule the *Bogosian* decision.

In light of the 1993 amendments to the federal rule, many courts ruled that disclosure of attorney work product materials to a testifying expert constitutes a waiver of protection from disclosure to the opposing party.[9] But that viewpoint was by no means universal and some courts felt that notwithstanding the Advisory

---

[7] Fed. R. Civ. P. 26(a)(2)(B) (1994).

[8] Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment.

[9] *See, e.g., Regional Airport Auth. of Louisville v. LFG, LLC,* 460 F.3d 697, 715 (6th Cir. 2006); *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 751 (7th Cir. 2005); *In re Pioneer Hi-Bred Int'l, Inc.,* 238 F.3d 1370 (Fed. Cir. 2001).

Committee's notes to the 1993 amendments, there remained a protection for attorney work product, even after being reviewed by an expert.[10]

The conflicting viewpoints in the circuits rendered the circumstances right for further clarification. And so it came to pass that in 2010 the rules were again changed, again quite dramatically. The point is that any decision interpreting the state of the law with respect to attorney-expert communications is a product of its times—decisions predating the 2010 amendment are of limited utility.[11]

The 2010 amendment to the federal rules rolled back the general theory of waiver of all privilege for materials shared with the expert. Instead, it endorsed a presumption of privilege except for those communications noted above: 1) all information concerning the expert's fee; 2) "facts or data" supplied by the attorney that were "considered" by the expert; and 3) "assumptions" supplied by the attorney that the expert "relied" upon.[12] According to the Advisory Committee, "the addition of Rule 26(b)(4)(C) is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing

---

[10] *See, e.g., Krisa v. Equitable Life Assurance Society*, 196 F.R.D. 254, 260 (M.D. Pa. 2000); *Haworth, Inc. v. Herman Miller, Inc.* 162 F.R.D. 289, 292-96 (W.D. Mich. 1995); *All West Pet Supply Co. v. Hill's Pet Prods*, 15 F.R.D. 634, 638 (D. Kan. 1993).

[11] *But see Yeda Research & Dev. Co., Ltd. v. Abbott GMBH & Co. KG*. 292 F.R.D. 97, 105 (D.D.C. 2013) ("Because the word 'considered' is unchanged, cases interpreting its meaning [before the 2010 amendments] remain valid.").

[12] *See* Fed. R. Civ. P. 26(b)(4)(c).

those communications to searching discovery."[13] Since the fee of the expert in this case is not at issue, it will not be discussed further. But "facts or data considered" and "assumptions relied on" require further study.

The additions of Rules 26(b)(6)(ii) and (iii) in 2010 were clearly intended to restrict the 1993 amendment eliminating any privilege for materials provided to the expert. It is simply no longer true that everything given to the expert must be disclosed in discovery—it is no longer true federally and because Delaware adopted the federal rule verbatim in 2014, it is no longer true in Delaware either.

The specific exceptions to the restrictions on disclosure are intriguing. While discovery may be had of "facts or data" provided by counsel and "considered" by the expert, only "assumptions" that are "relied upon" by the expert are discoverable.

These terms contain distinctions that matter. The rule requires disclosure of facts or other information "considered" by the expert. The term "considered" enjoyed a number of judicial interpretations, almost uniformly to the effect that material is "considered" if it was seen by the expert, regardless whether he relies upon it and indeed, even if he rejects it entirely.[14] Thus, experts have been deemed

---

[13] Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment.

[14] *See, e.g., McCormick v. Halliburton Energy Servs. Inc.*, 2015 WL 2345310, at *2 (W.D. Okla. May 14, 2015); *Yeda Research & Dev. Co., Ltd.*, 292 F.R.D. at 105; *W. Res., Inc. v. Union Pac. R.R. Co.*, 2002 WL 181494, at *9 (D. Kan. Jan. 31, 2002); *Monsanto Co. v. Aventis Cropscience, N.V.*, 214 F.R.D. 545, 547 (E.D. Mo. 2002).

to have considered materials even when they have testified, under oath, that they did *not* consider the materials in forming their opinions.[15]

The second exception to non-disclosure applies to assumptions "relied" on by the expert. This provision makes its first appearance in the Rules in 2010 and, so far as we can determine, is bereft of decisions interpreting it. But the Advisory Committee enacting the rule said this:

> For example, the attorney for a party may tell the expert to assume the truth of certain testimony or evidence, or the correctness of another expert's conclusions. This exception is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed. More general attorney-expert discussions about hypotheticals, or exploring possibilities based on hypothetical facts, are outside this exception.[16]

So to the extent the attorney communicates with the expert his "assumptions" about the case—be they hypotheticals or other possibilities—these communications are privileged from disclosure unless the expert were to aver that he "relied" on the assumption as posited by the attorney.

While this may seem like semantics, it is more fair to the drafters to conclude that they were seeking to create a zone of communications between the attorney and the expert that were protected and the protections broadened the more

---

[15] *See, e.g., Euclid Chem. Co. v. Vector Corrosion Techs., Inc.,* 2007 WL 1560277, at *6 (N.D. Ohio May 29, 2007); *W. Res., Inc.,* 2002 WL 181494, at *9; *Monsanto Co.,* 214 F.R.D. at 547.

[16] Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment.

the communication reflected the attorney's own thoughts and shrank when the communications were merely recitations of objective fact.

Thus, in deciding a motion to compel the production of attorney-expert communications, the Court must determine exactly what are "facts or data" that are "provided by the attorney?" In this case, the "Work Product Memorandum" contains some facts gathered from the depositions of witnesses or the hospital records assembled in a way that presents to the expert why the attorney believed negligence occurred. Do the "facts or data" so assembled represent material "provided" by the attorney, or are these facts or data provided in the discovery materials to which each side has full access? And if the facts or data are merely a selective reiteration of materials already made available to opposing counsel, must they nonetheless be turned over to counsel, for whatever use he might make of it? We think that the only way to answer these somewhat subtle questions is by reference to the policies sought to be achieved by the 2010 amendments, adopted by Delaware in 2014.

The Advisory Committee tells us, "The exception applies only to communications 'identifying' the facts or data provided by counsel, further communications about the potential relevance of the facts or data are protected."[17] Here, the deposition testimony and other discovery material are included in the

_____

[17] *Id.*

9

discovery binder provided to opposing counsel at the outset of the expert deposition. So there is no question but that all of the facts and data contained in the "Work Product Memorandum" are facts and data readily available by resort to the other materials in the binder.

As stated by the Ninth Circuit: "the Committee sought to balance the competing policy considerations, including the need to provide an adversary with sufficient information to engage in meaningful cross-examination and prepare a rebuttal, on the one hand, and the need to protect the attorney's zone of privacy to efficiently prepare a case for trial without incurring the undue expense of engaging multiple experts, on the other."[18]

The Ninth Circuit's analysis begs us to consider this question: what "meaningful cross examination" is there to be had of the expert if opposing counsel is given access to a memo explaining the factual reasons why the plaintiff's attorney thinks the defendant committed medical malpractice? The expert already insists that his opinions are his own and the facts and data he relies upon in making those opinions lie in the depositions and other discovery taken to date. The memorandum may prove that he had some help in coming to those conclusions, but what of that? The expert must defend his conclusions on their merits and cross

---

[18] *Republic of Ecuador v. Mackay*, 742 F.3d 860, 870-71 (9th Cir. 2014).

examination. The fact that attorney work product asserts the same conclusion is essentially irrelevant.[19]

To suggest that this expert is but a pawn to Plaintiff's counsel because counsel "pitched" a theory of liability to the expert is to invade the province of protected communications and has the double trouble of suggesting this behavior is somehow unique to this case. The Court understands that discussions, emails, and meetings between experts and lawyers at which facts are discussed, theories are vetted, and assumptions are assumed is the stuff of the litigator's craft. The only thing unusual about this case is that the communication was in memo form and was inadvertently passed to opposing counsel. While that certainly takes this case out of the norm for such communications, we would do well to remember that Rule 26 protects all communication, in whatever form. A ruling requiring disclosure of this memorandum of plaintiff's counsel's recitation of otherwise available facts would necessarily mandate disclosure of all communications between counsel and a testifying expert in future cases. It seems to the Court that

---

[19] It is easy to envision a potentially embarrassing line of cross-examination of the expert as the "facts" pointed out by plaintiff's counsel are also recited by the expert in support of his conclusions. But beyond embarrassment, what more is accomplished? The Third Circuit recognized as much in its *Bogosian* opinion, saying "the marginal value in the revelation on cross examination that the expert's view may have originated with an attorney's opinion or theory does not warrant overriding the strong policy against disclosure of documents consisting of core attorney's work product." 738 F.2d at 595. The *Bogosian* opinion, although vanquished in 1993, was essentially vindicated in 2010. Its evidentiary observation still makes good sense.

such a rule is exactly what the 2014 amendment to the Delaware Rules was intended to avoid.

There may well be "facts or data" prepared by counsel or at his direction specifically for the edification of the expert witness. Such was the case in *Fialkowski v. Perry*, which involved a suit against a law firm by a former partner.[20] The plaintiff, at the direction of her litigation attorney, prepared a memorandum explaining the relevance of certain documents produced by the firm's Quickbooks accounting software.[21] The attorney forwarded the materials to an accounting expert who "considered" the materials, and then sought privilege from disclosure because it was either 1) attorney-client communications or 2) attorney work product.[22] The Court rejected both arguments and held that the memo contained facts or data that were actually created by the plaintiff and supplied to the attorney, and later to the expert.[23]

Likewise, it is not unusual for attorneys to interview fact witnesses that are never deposed. The substance of those interviews may well be transmitted to the expert who may consider them in formulating his opinions. Without disclosure,

---

[20] 2012 WL 2527020 (E.D. Pa. June 29, 2012).

[21] *Id.* *2.

[22] *Id.*

[23] *Id.* at *4.

12

there would be no way for opposing counsel to cross-examine the expert on the facts revealed by the attorney. It makes good sense that such "facts or data" be made discoverable in that scenario.

The same considerations do not apply here. The memorandum in question is clearly intended to discuss the "potential relevance" of the facts or data located in various other documents in the expert's binder. The memo represents plaintiff's counsel's "pitch" to the expert in support of the conclusion that the defendant committed medical negligence. Counsel supports that pitch by reference to various facts and data as gleaned through discovery. The memo contains no facts or data not found elsewhere. Counsel's choice of which facts to highlight for the benefit of the expert represents counsel's "mental impressions" and work product. The "pitch" to the expert certainly does contain assumptions by counsel that may or may not be shared by the expert, but that is of no moment, since the expert has sworn that he did not "rely" on those assumptions.

## CONCLUSION

On balance, the Court is convinced that plaintiff's counsel's "Work Product Memorandum" and "Deposition Preparation Outline" are not subject to disclosure to opposing counsel. Rather, they sit in that zone of materials that the drafters of Rule 26(b)(6)(i)and (ii) intended to protect from disclosure in favor of promoting candid interchange between an attorney and retained experts. Those interchanges

13

may take place by phone, by email, by face to face meeting, or, as here, by memorandum. Whatever the form, however, it is clear that the rules are intended to protect them from disclosure to opposing counsel.

**IT IS SO ORDERED**.

Judge Charles E. Butler